## JONES V. STATE.

| 52 | 345 |
| 57 | 467 |
| 52 | 345 |
| 63 | 384 |
| 52 | 345 |
| 74 | 453 |
| 74 | 461 |
| 52 | 345 |
| 85 | 304 |
| 85 | 519 |
| 52 | 345 |
| f88 | 449 |

1. CRIMINAL PROCEDURE: *Instruction as to degrees of homicide.*

On a trial for murder in the first degree where all the evidence is to the effect that the killing was assassination of the deceased, at night, by his fireside, committed by some one who shot him through a crack in his house, the failure of the court to charge the jury as to the lower degrees of homicide is not error. Hemingway and Hughes, J. J., dissenting.

2. EVIDENCE: *Dying declarations.*

A mere expression of opinion is not admissible as a dying declaration; and it is immaterial whether the fact that a declaration *is* mere opinion, appears from the statement itself, or from other undisputed evidence showing that it was a physical impossibility for the declarant to have known the facts stated.

APPEAL from *Benton* Circuit Court.

J. M. PITTMAN, Judge.

Samuel D. Jones was tried on an indictment charging him with the murder of Henry W. Keltner. He was convicted of murder in the first degree and appealed.

*Marshall & Coffman*, for appellant.

1. Review the evidence and contend that the verdict was not sustained by it, but was contrary to it. No motive whatever was shown for the crime.

2. It was error to exclude the dying statement of deceased. *39 Ark., 225.*

3. It was error to overrule the motion for continuance, and allow the State to admit that the absent witness would, if present, swear to the matters set up. *50 Ark., 161.*

4. The court in its charge virtually told the jury they must convict of murder in the first degree, or acquit. This was error. *43 Ark., 289; Hopt v. People, 4 Sup. Ct. Rep; Thomps. on Trials, sec. 2184; 2 Bish. Cr. Pro., sec. 642 ; 8 Ohio St., 194. 5; 37 Ark., 435 ; 50 Ark., 506 ; 38 id., 310 ; 30 id., 328 ; 10 S. W. Rep., 233; 25 Ark., 405.*

*W. E. Atkinson*, Attorney General, and *T. D. Crawford*, for appellee.

Jones v. State.

1.   There is evidence to sustain the verdict.   *11 Ark., 463;* *34 id., 737; 35 id., 652; 16 id., 592; 29 id., 166.*

2.   There was no evidence whatever of any crime less than murder in the first degree.   He was guilty of murder in the first degree, or innocent.   And it was not error to refuse to charge the jury as to the lower grades of homicide.   *50 Ark., 508; 37 Ark., 435; 38 id., 310.*

3.   The dying statements properly excluded, as they were mere *expressions of opinion.   39 Ark., 227.*

4.   The refusal to grant a new trial was in the sound discretion of the court.   There was no show of diligence.   *2 Thomps. on Trials, sec. 2767 ; Hill New Tr., p. 393, sec. 35 ; 5 S. & R., 42; 13 Ga., 358; 7 Clarke, 255; 13 Ark., 105; ib., 362.*

PER CURIAM.   The first, second and third grounds of appellant's motion for a new trial are that the verdict is contrary to the law and evidence.   The fourth is that the court neglected to properly instruct the jury as to all the different degrees of homicide.   The fifth, that the court erred in refusing to give instructions asked by defendant, numbered from one to five, inclusive.   The sixth, because of newly-discovered evidence.   Many matters, not presented by the record, have been argued by counsel and considered by the court.

As to the first, second and third grounds of the motion, we think the verdict warranted by the evidence and the law as given by the court.   Nor was it error to refuse the first, fourth and fifth instructions asked by defendant, in view of the charge actually given.   The sixth ground for new trial was matter resting in the sound discretion of the court, and no abuse of such discretion appears.   The fourth ground of the motion challenges the correctness of the charge in that it failed to state the law applicable to the lower degrees of homicide.   The charge should be based upon the evidence, and it is difficult to imagine how instructions as to murder in the second degree or manslaughter could have been given when all the evidence was to the effect that the killing was

assassination of Keltner, at night, by his fireside, by some one-
who fired through a crack from without. The trial court should
in no case indicate an opinion as to what the facts establish;
but in properly giving the *law* the court must of necessity de-
termine whether there *is any evidence at all* justifying a partic-
ular instruction. See *Fagg v. State, 50 Ark., 506,* and cases
cited.

One of the matters argued, though not raised in proper
form, is the alleged error of the court in excluding the testi-
mony offered as to the dying declaration of Keltner. The
witness says that some hours after the shooting Keltner said
that Samuel Hall shot him.

A mere expression of opinion by the dying man is not ad-
missible as a dying declaration, and it is immaterial whether
the fact that the declaration *is* mere opinion appears from the
statement itself, or from other undisputed evidence showing
that it was impossible for the declarant to have known the fact
stated. If, upon any view of the evidence, it is possible for
the declarant to know the truth of what he states, his declara-
tions, being otherwise competent, should be received and con-
sidered by the jury in the light of all the evidence.

In the case at bar it was a physical impossibility for Kelt-
ner to have seen who shot him, and the consciousness of
wrong done in the killing of Hall's father made him swift to-
suspect Hall of the commission of this crime.

The facts in the case of *Nick Walker v. State, 39 Ark., 225,*
were very similar to those now before the court, and the-
declarations in that case were held to be properly admitted.

The court divided, however, upon the question as to
whether it was possible for the declarant to have *seen* Walker,
and a majority sustained the trial court in the view that it was-
possible.

Affirmed.

2. EVI-
DENCE:
Dying
declara-
tions.

HEMINGWAY, J. (Dissenting.) I am unable to concur in the opinion of the court in this case; but think that the judgment should be reversed and a new trial awarded.

The charge of the court was entire; not as is usual, divided into a number of instructions. It contained reference alone to the law applicable to murder in the first degree. It announced that the defendant was charged with murder in the first degree; and instructed the jury that if they found him guilty, as charged, they would return a verdict of guilty of murder in the first degree.

No jury of good intelligence could have understood the charge in any other way than as directing a conviction for murder in the first degree or an acquittal. True, there was no language expressly prohibiting a conviction for a lower grade of homicide; but substantially, the direction to convict of murder in the first degree or acquit, implied a prohibition against a conviction of a lower grade of offense. In my opinion this court should treat the charge as saying what it fairly imports, and would naturally be received by an honest and intelligent jury as meaning. We should not endeavor to find a meaning different from that, and impress this meaning upon the charge, although, if so interpreted, it might properly declare the law. The force of the charge rests in its interpretation by the jury; it should not only properly declare the law, but also declare it in a manner to be properly understood.

I am unable to reconcile this charge with the law as declared in the case of *Flynn v. The State, 43 Ark., 289.* In that case the Circuit Judge in concluding his charge, "instructed the jury that if they found the defendant guilty they should assess his punishment at not less than three nor more than twenty-one years in the penitentiary, and that in this case the defendant was guilty of an assault with intent to kill, or that he was guilty of nothing." This court say, "the charge in the case at bar left the jury no room to infer anything in regard to the degree of the offense, or of the nature of the penalty, but

cut them off from finding the prisoner guilty of any of the lower grades of assault, as they might have otherwise done. Under an indictment, such as we have here, a prisoner may be convicted of any one of several very grave offenses, an assault with intent to murder being the highest in degree, and he has the right to have judgment of the jury uninfluenced by any direction from the court as to the weight of evidence." The judgment was reversed.

Now, under the indictment in the case at bar, the jury might have convicted the appellant "of any one of several very grave offenses," murder in the first degree being the highest, and he had a right to have the judgment of the jury "uninflu- enced by any direction from the court as to the weight of evi- dence." Was the right accorded him? Was the jury per- mitted to act uninfluenced by any direction of the court? The court said, the defendant is charged with murder in the first degree; then follows a lengthy instruction as to the law appli- cable to murder in the first degree; there is nowhere an inti- mation that the indictment contained a charge of the lower grades of homicide, or that the jury could convict therefor. It concludes by saying: "If you find the defendant guilty as charged, you will say, we, the jury, find the defendant guilty of murder in the first degree." If the jury was uninfluenced by this charge, and was not restrained from convicting for a lower grade of offense, I am of opinion that the charge had an effect different from that intended by the learned Judge. In a proper case, I think such an instruction ought to be given; but I am satisfied that this court has not so ruled, and I am not willing to change the rule by refinement of language and confusing distinctions.

In a later case this court discussing the same question says: "But the court cannot direct a verdict for the higher offense, nor restrain the jury from returning it for the lower grade.'" *Fagg v. State, 50 Ark., 506–8.*

It may be said that no exception was properly saved to the charge. The exception was to the charge *in solido;* as the charge was not divided, but given as an entirety, it may well be contended that the exception was sufficient. Be that as it may, the law denounces the penalty, of death against the murderer, and not against the unskilful or unwary. I cannot concur in a judgment, which, because a defendant has not conformed to a technical rule in preparing a bill of exceptions, dooms him to the gallows. I esteem fixed rules, intended to secure orderly procedure in the courts; but think all such technical rules should yield, when necessary, to protect the life of a human being.

HUGHES, J. I concur in this opinion, except that I think, upon the whole case, the judgment should be affirmed.