## SMITH *v.* STATE.

### Opinion delivered March 31, 1913.

APPEAL AND ERROR—EVIDENCE—EXCLUSION OF ENTIRE TESTIMONY OF WITNESS.—Where portions of the testimony of a witness are incompetent as hearsay, and other portions are clearly admissible, and no objection was made to any of the evidence until the conclusion of the examination of the witness when the court, on motion of the prosecuting attorney, excluded all the testimony; *held,* the defendant was entitled to the benefit of the competent testimony, and it was error to exclude the whole testimony.

Appeal from Union Circuit Court; *George W. Hays,* Judge; reversed.

*Appellant pro se.*

*Wm. L. Moose,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. The defendant was convicted at the September term, 1912, of the Union Circuit Court for criminal trespass, alleged to have been committed by cutting down and destroying certain cypress trees of the value of $250, standing and growing on certain land there described, the property of the American Timber Company, a corporation whose assets were then in the hands of one C. H. Murphy as receiver under the appointment of the chancery court of that county. The defendant was convicted and his punishment fixed at one month in the penitentiary by the verdict of the jury, and from the judgment of the court pronounced thereon, this ap-

peal is prosecuted.   The proof appears to have been sufficient to warrant the verdict and we will consider only the exceptions saved to the action of the court during the progress of the trial.   These exceptions relate chiefly to the court's action in admitting and excluding evidence and in its charge to the jury.   Appellant points out no specific objection to any instruction; in fact, he relies for a reversal chiefly on the insufficiency of the evidence to sustain a conviction, and the exceptions saved to the court's action in admitting and excluding evidence. Upon a consideration of all the objections to the evidence, urged by the appellant, we are of opinion that only one is of sufficient importance to call for a reversal of the cause, or a discussion of its merits.   Appellant was found in possession of certain logs which probably came from the lands of the timber company; in fact, the proof to that effect is convincing and practically undisputed as to certain logs found mingled with those of appellant and which were branded with his brand.   In explanation of this circumstance, appellant testified that his employee inadvertently and without directions branded these logs when he should not have done so. The logs were found in the river in April, 1911.   Appellant admitted that he had been getting out logs to raft in the preceding winter, but stated that he had cut them from a section of land on which he had the right to cut and that he cut them in the winter of 1910, and before Christmas of that year.   In support of this defense, a witness, R. Harrison, was called who testified in part as follows:

Q.   Do you know about the occasion of Mr. Smith getting some timber from down there at Henderson Bend and Beth Shanty?

A.   Yes, sir.

Q.   Do you know when Mr. Smith was cutting timber that he hauled there?

A.   Yes, sir; I was in the bottom hunting at different times in there—that is, where they claim he got this timber.

Q. They claim he got this timber on sections 33 and 28. You may state whether or not you know where the stumps were—where these blocks were cut off of?

A. I did not see any of the stumps in there.

Q. You know the location of 33 and 28?

A. Yes, sir.

Q. Do you know when Mr. Smith quit cutting?

A. Yes, sir.

Q. You may state whether or not there was any timber cut in sections 33 and 28 when Mr. Smith quit cutting?

A. No, sir; there was not in there—that is, I was in there a few days after he moved out and there was not any timber cut in there then.

### CROSS EXAMINATION.

Q. Mr. Harrison, you and Mr. Smith were partners?

A. No, sir; not partners.

Q. You all got timber together, didn't you?

A. I helped him cut timber, but I did not help him cut that timber. I was not working there and had nothing to do with the timber at all.

Q. What timber did you help him cut?

A. Some out at L'Aiglle Lake.

Q. That was attached, too, wasn't it, or replevied?

A. They said it was.

Q. Do you know whether it was or not?

A. Yes, sir.

Q. Did you hunt all over section 28?

A. Yes, sir; in that part of the country.

Q. I am talking about section 28.

A. Yes, sir.

Q. And section 33?

A. Yes, sir.

Q. And section 21?

A. Yes, sir; in that part of the country.

Q. When were you hunting?

A. Of course, I generally hunted in the fall or the spring.

Q. When was this timber cut?

A. I reckon along in January, I guess. I do not know; I never kept up with the date.

Q. When were you hunting there?

A. Off and on all the time.

Q. How far do you live from there?

A. About six miles; five or six.

Q. And you would go down there squirrel hunting or cattle hunting?

A. Yes, sir.

Q. So you say there was no timber cut there in January?

A. Yes, sir.

Q. Did you go all over each of these forties in these different sections?

A. I do not know whether I did or not, but I was in that part of the country—that is, all in those sections—but I was not hunting any timber.

Q. And you did not notice any timber having been cut in January, 1911, or 1910?

A. In 1911, I guess.

Q. Have you hunted down there since then?

A. Yes, sir.

Q. Didn't you just now state you had not noticed where any stumps were cut?

A. I did not notice where any were fresh cut.

Q. And you never noticed any stumps?

A. No, sir; I did not notice any fresh stumps.

Q. How do you know what sections you were on?

A. That is what they say. Of course, I did not know anything about the land, but it was in that part of the country. I can tell you the exact part of the country I was in, if you want to know.

Q. I want to know how you know it was in sections 28 and 33 and 21?

A. I know it was in that part of the country they said.

### RE-DIRECT EXAMINATION.

Q. Do you know where Fish Trap Lake is?

A.  Yes, sir.
Q.  Which way was it from Fish Trap Lake?
A.  Out east.
Q.  Which way did you go from Henderson Bend?
A.  I was all the way east of Fish Trap Lake, east of Shallow Lake, around Open Brake and Mud Slough, and down to Henderson Bend and Beth Shanty.

Upon motion of the State, all this evidence was excluded because the witness knew only from what he had heard the numbers of the sections on which the timber was alleged to have been cut. This evidence is set out *in extenso* and it thus appears that portions of his testimony was hearsay, while other parts were clearly admissible. No objection was made to any of this evidence until the conclusion of the examination of the witness when the court on the motion of the prosecuting attorney excluded it all. While this evidence may have been of doubtful value, it at least tended to corroborate the testimony of the defendant and he was entitled to its benefit, and we think the action of the court in excluding it was error and requires the reversal of the case.

Other questions raised will not likely arise on another trial of the cause; among these a motion for a new trial on account of newly discovered evidence and a discussion of these questions is accordingly pretermitted.

For the error in excluding the evidence set out above the judgment is reversed and the cause remanded.