MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. HAIGLER, ADMX.

4-6494                                          158 S. W. 2d 703

Opinion delivered February 16, 1942.

*Henry Donham* and *Pat Mehaffy*, for appellant.

*Pace, Davis & Pace, W. F. Denman* and *Tom W. Campbell*, for appellee.

McHANEY, J. Appellee is the administratrix of the estate of her deceased husband, Leonard Henry Haigler. She brought this action against appellants, Missouri Pacific Railroad Company and Guy A. Thompson, its trustee, to recover damages for personal injuries received by him and for his death on January 14, 1940, as a result of a train collision at or near Wagoner, Oklahoma, on said date. The action was brought under the Federal Employers' Liability Act, the deceased being a fireman in the employ of appellants and being engaged in interstate commerce at the time.

The complaint alleged that at about 7:15 p. m. on said date freight train No. 161, on which intestate was the fireman, running from Coffeyville, Kansas, to Van Buren, Arkansas, ran into the rear of freight train No. 167 in the yards at Wagoner, on the main line in said yards, demolishing the caboose and about ten cars on the rear of No. 167, and causing the engine on No. 161, on

which intestate was riding, to leave the track and turn over, thereby injuring him by a blow on the head, crushing his chest, causing an internal hemorrhage, and scalding him with escaping steam and hot water from bursted pipes, from all of which he died some 12 or 14 hours later. The negligence laid and relied on in the complaint is as follows: "That train No. 167 was running ahead of train No. 161 and that train No. 167 entered the railroad yards at Wagoner, Oklahoma, and while on the main track a drawbar pulled out of one of the cars in the train, leaving a portion of the train standing on the main line; that deceased, Leonard H. Haigler, was fireman on the front engine of train No. 161; that the engineer on the front engine of said train was A. E. Rice, and the conductor was William Hamilton, and the conductor as well as the engineer was on the engine at the time the accident occurred; that there was a second engine on train No. 161, just behind and attached to the front engine, and on the second engine Clarence L. Hogan was the engineer and was killed in the wreck. J. L. Fine was fireman on this engine and was seriously injured; that before train No. 161 entered the yards at Wagoner the headlight upon the engine upon which deceased was riding failed and went out, and conductor Hamilton, who was at the time riding on the engine, and engineer Rice, who was the engineer upon said engine, carelessly and negligently failed to stop said train and adjust or repair said headlight, or use a white lantern and run at restricted speed to a point where repairs could be made or the engine changed, and carelessly and negligently continued to run said train at a rate of speed, 25 to 40 miles an hour, without a headlight, and in so doing ran into the rear of train No. 167 and injured the deceased, Leonard H. Haigler; that on account of the carelessness and negligence of said conductor Hamilton and said engineer Rice as above set forth, the collision mentioned above occurred, resulting in the death of Leonard H. Haigler."

Prior to the institution of this action in the Nevada circuit court, the same suit was brought in the Clark circuit court by appellee, and appellant moved to dismiss this cause because that was still pending. The court

overruled the motion, it being shown that appellee's counsel had written the clerk of the Clark circuit court to dismiss the case there pending and had paid all the costs. This amounted to a dismissal of the action as authorized by § 1486 of Pope's Digest.

Appellants' answer was a general denial with a plea of contributory negligence on the part of said intestate, in that he violated three rules of appellants, with which he was familiar, to-wit: No. 93, that second class trains (161 and 167 both being such) "must move within yard limits prepared to stop unless the main track is seen or known to be clear"; No. 17, "When electric headlight fails, use white lantern and run at restricted speed to a point where repairs can be made or engine changed"; and No. 981, ". . . In cases where safety of trains and observance of rules or orders are involved, firemen are held responsible to the extent of their ability to prevent accident or violation of rules." The answer bases a violation of these rules on the alleged fact that intestate had exchanged places with the engineer and that he was operating the engine of No. 161 until it approached the yards at Wagoner and knew that the train was entering said yards when he surrendered the throttle to the engineer; that the latter was performing the fireman's duties by firing the engine while the former was at the throttle; that intestate failed to keep a proper lookout while operating the engine; that he saw or should have seen the train ahead and negligently failed to stop the train or check its speed as it approached the yards or to warn the engineer or conductor of the train on the track ahead; that he thereby violated the rules aforesaid, and that his injuries and death were the result of his own negligence and barred a recovery. The answer alleged the violation of other rules and other negligence on his part.

Trial resulted in a verdict and judgment against appellants for $35,000, of which amount $30,000 was for the benefit of the widow and $5,000 for the benefit of the estate. This appeal followed.

For a reversal, it is first argued that appellants were guilty of no actionable negligence, and that for this rea-

son the case should be reversed and the cause dismissed. We cannot agree. Viewed in the light most favorable to appellee, the facts are briefly as follows: two freight trains left Coffeyville for Van Buren on January 14, 1940, No. 167 leaving about an hour ahead of No. 161. Train No. 167 arrived in the yard limits near Wagoner, took on coal and water and started to pull out, when a drawbar on the 43d car of the train of 91 cars broke, which necessitated the setting out of the bad order car, which the crew proceeded to do. The caboose and the cars ahead of it to the bad order car were left on the single track main line, the caboose being equipped with three lights showing red to the rear, two marker lights, one on each side, and one cupola light, all properly burning. The weather was cold and clear, visibility was good. Train No. 161, in addition to the lead engine on which intestate was fireman, had another engine, which was not working, on which was an engineer who was killed in the wreck and a fireman who was injured, a water tank and 65 cars. Hamilton was the conductor and was riding in the cab of the lead engine with engineer Rice and said intestate. This train stopped at Inola, 16 miles from Wagoner, took the siding to let a train pass, where the conductor boarded the engine, as was customary, to ride into Wagoner. As they left Inola, the engineer and intestate changed places, as he says the fireman complained of his back hurting, and each performed the other's duties, although engineer Rice testified he would not permit Haigler to apply the air to the brakes. At some point, not definitely shown, the engineer took the throttle, and about that time the front headlight on the engine went out and Rice immediately made a service application of the air to the brakes to bring the train under control, and, only a very short time later, he saw the lights of the caboose on No. 167, made an emergency application of the air and crashed into it at a speed of 25 or 30 miles per hour. It is undisputed that the caboose of No. 167 was standing in the yards at a distance of about three-fourths of a mile from the yard limit board and that the track was straight for a distance of about three miles back, but there was a small hill back north about a mile

from the yard limit board and the light went out about that point or further back, and at that time train 161 was running 40 or 50 miles per hour. Neodesha is a station about half way between Inola and Wagoner.

We are of the opinion that this evidence was sufficient to justify a finding by the jury of negligence on the part of all three operatives, including Haigler, whose negligence will be more fully referred to later herein. The conductor was in command of the train and the engineer was in charge of the engine, and both were in the cab. They permitted intestate to operate the engine without authority to use the brakes until they were almost in the yards at Wagoner, either of whom, by the slightest attention, could have known such fact. If the light went out at the top of the hill or even further back, it would appear there was nothing to prevent the engineer who was then at the throttle from seeing the lights of the caboose about a mile and three quarters ahead of him and bringing his train under control, even though he was momentarily fire-blinded from firing the engine, as he said he was. The conductor knew they were about to reach the yards. He and the others must have known when they passed through Neodesha and knew they were only a few miles from the yard limit. Instead of instructing the engineer to take charge, he and the engineer permitted the fireman to proceed with the train at 50 miles per hour, until it was too late to stop. We think the jury correctly found them guilty of negligence.

It is next contended that the negligence of Haigler was the sole proximate cause of the injury, and, for this reason, there can be no recovery. We cannot agree. We do agree that he was negligent in failing to see and to know of the danger ahead. Even if he surrendered the throttle to the engineer at a point far enough away to enable the latter to bring his train under control before reaching the scene of the collision, he should have warned him of the danger ahead, if he saw it, and if not, then to have warned him of the proximity to the yards. It appears to us that the train was almost entering the yards when the exchange was made, because of the very brief lapse of time after the exchange until the collision

occurred. But contributory negligence does not bar a recovery under the Employers' Liability Act, and only serves to mitigate the damages.

Another assignment relates to the dying declaration of Haigler. It is contended that it was inadmissible, not on the ground that it was not made under a sense of impending death, but because, it is contended, that he was "suffering from shock and under the influence of opiates to such an extent as to render him incapable of knowing what he was doing or saying or of making the statement at all in fact." Such evidence is admissible under the conditions set out in § 5201, Pope's Digest. We dispose of this assignment against appellant on the ground that there was substantial evidence to show that he was conscious, and whether he was, or whether he made the statement testified to by his son-in-law, were questions of fact for the jury. The same rule under the above mentioned statute in criminal cases is applicable to civil cases, and, as we said in *Goynes* v. *State,* 184 Ark. 303, 42 S. W. 2d 406, "whether the deceased was of sound mind when he made the statement was a question of the credibility rather than the admissibility of the declaration."

Other assignments of error are argued, including the statement that conceding appellants' negligence, still appellee is not entitled to recover under the federal act; error in giving appellee's instruction No. 1; and error in empaneling the jury. We have carefully considered these assignments and find them without substantial merit. We do not discuss them in detail, as to do so would unduly extend this opinion. As to the first of these, appellants rely upon *Van Derveer* v. *Delaware, L. & W. R. Co.,* 84 Fed. 2d 979, where it was apparently held that, under the federal act, "where injury to an employee results from combined fault of himself and a fellow worker, damages are divided except where injured employee's fault is violation of rule or express instruction." Also *Paster* v. *Penn. R. R.,* 43 Fed. 2d 908. But see also *Gildner* v. *B. & O. R. Co.,* 90 Fed. 2d 635, and cited and quoted from in our own case of *Kansas City Southern Ry. Co.* v. *Larson,* 195 Ark. 808, 114 S. W. 1081.

The only other assignment we deem it necessary to discuss is that the verdict and judgment are excessive, and we agree with this contention. It is not seriously contended that the verdict and judgment for the estate for $5,000, for the conscious pain and suffering, is excessive, but appellants do say "it is doubtful that the deceased suffered one minute's pain," because of the opiates administered and of the terrible injuries he received. But, as above stated, there was substantial evidence to take the question to the jury and we do not disturb the verdict and judgment in this regard. The judgment for $30,000 for the benefit of the widow is excessive for two reasons: 1st, the jury did not apparently take into consideration the contributory negligence of deceased; and 2nd, the finding was based on the admitted earnings of deceased of $200 per month, $180 of which per month he contributed to appellee. We think the evidence shows that deceased, while acting as engineer, either failed to keep a proper lookout to determine his proximity to the yard limit or to determine the fact that train 167 was on the track ahead, or that he knew these facts and negligently failed to warn the engineer of them when he turned the operation of the engine over to the engineer. It was his duty to keep a constant lookout as engineer and to keep a lookout as fireman when his other duties did not interfere therewith. We think he violated those duties and was guilty of negligence contributing to his injury. As to his contributions from his salary to appellee, it is too incredible and too much out of line with human experience to believe that he spent only $20 per month of his salary of $200 upon his own necessities and gave his wife $180 for hers. The sum of $30,000 invested at 6 per cent. per annum would yield her an annual income of $1,800 per year or $1,200 at 4 per cent. and at her death leave her an estate of $30,000.

After a careful consideration of this matter, we have reached the conclusion that a judgment for $15,000 for the benefit of the widow and next of kin is the maximum amount supported by the evidence, and the judgment will be reduced by the sum of $15,000, leaving a total judg-

ment for $20,000. As thus modified the judgment will be affirmed.

HUMPHREYS, J., dissents; MEHAFFY, J., not participating.

GRIFFIN SMITH, C. J. (concurring in part). I agree with the majority in the holding that the evidence does not support the judgment for $30,000. However, reduction to $15,000 is too great.

HUMPHREYS, J. (dissenting). In my opinion the majority have clearly invaded the exclusive province of the jury in reducing the verdict in favor of appellee from $30,000 to $15,000. In doing so they have assumed the right to pass upon the credibility and weight of the evidence of the only witness who testified in the case regarding the monthly contribution of deceased to his wife out of his salary or earnings. Appellee testified positively that her husband contributed $180 each month toward her support. It was within the sole province of the jury to believe or disbelieve her and not the privilege of the Supreme Court to discredit her testimony and discard it as being without weight. This court said in the case of *Missouri Pacific Railroad Company* v. *Lemons*, 198 Ark. 1, 127 S. W. 2d 120, that: "In this case the question as to whether the appellant was guilty of negligence and as to whether the appellee was guilty of contributory negligence were questions of fact for the jury. The jury is the judge of the credibility of the witnesses and the weight of their testimony, and where there is substantial evidence to sustain its finding, it is conclusive. There was substantial evidence in this case to support the verdict, and the judgment is therefore affirmed."

In addition to the appellee's positive evidence, which was not disputed by any witness, that her husband contributed $180 towards her support, there was other evidence that he earned $200 per month and sometimes more, so he could have done so. The proof is positive that he was a sober, industrious man and had no bad or extravagant habits. In other words, the proof is certain that the deceased had the ability to contribute $180 per month

toward the support of appellee. The jury believed her and this court has no authority whatever to say that she was unworthy of belief and eliminate her testimony as being without weight.

If appellee testified to the truth, and the jury said she did, then the verdict she received is not excessive. The record reflects that the deceased husband had an expectancy of over twenty-three years when he was killed through the negligence of appellants' employees, without contributory negligence on his part, so it follows that appellee was deprived and will be deprived of $180 per month for twenty-three years, or a total amount of $49,-680. It is commonly known and generally understood that 3 per cent. per annum is a fair interest return upon safe investments. Money can now be invested in United States bonds that bear 2 per cent. or $2\frac{1}{2}$ per cent. interest. It can certainly be said that money cannot be loaned on safe investments at the present time at 6 per cent. as was formerly done. In order then to ascertain the damages which might be awarded to appellee by a jury, under the undisputed facts, the total amount of $49,680 should be reduced to its present worth on the basis of a reasonable rate of interest. Three per cent. in the present situation is about what money can be loaned for on a safe investment. If $49,680 is reduced to its present worth on a basis of 3 per cent. appellee would be entitled to recover $36,965. In other words, a recovery for that amount would not be excessive under the undisputed facts in this case. To put it a little differently, the verdict for $30,000 returned in favor of appellee is supported by substantial evidence and the amount of the verdict should not be disturbed by this court, and it cannot be disturbed by this court without invading the exclusive province of the jury. It should not be reduced on account of contributory negligence on the part of deceased because, under the undisputed evidence in this case, deceased was not guilty of any negligence whatever. He was under the absolute control of the conductor and engineer and was simply obeying their orders in the work he was performing.

The jury system as the trier of facts is vouchsafed to us by the Constitution of this state and is an integral

part of our system of jurisprudence and, for that reason, the solemnity of jury verdicts should be recognized by our courts. To override the verdict of juries supported by substantial evidence will tend to destroy the jury system or else result in a constitutional amendment preventing courts from interfering with jury verdicts at all.

My high regard for the solemnity of jury verdicts forbids that I follow the majority into the field of determination of facts in the instant case.

I, therefore, most respectfully dissent from that part of the opinion of the majority in finding that deceased was guilty of contributory negligence and in reducing the amount of the verdict.