RIDDLE *v.* STATE.

196 S. W. 2d 226

Opinion delivered June 24, 1946.

Rehearing denied September 30, 1946.

*Willis & Walker,* for appellant.

*Guy E. Williams,* Attorney General and *Earl N. Williams,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellant, Ben Riddle, was charged by information filed by the prosecuting attorney with the crime of murder in the first degree for the alleged killing of Walter Ashmead on November 20,

1945. The jury found appellant guilty of murder in the second degree and fixed his punishment at 10 years in the state penitentiary.

For reversal of the judgment, appellant first challenges the sufficiency of the evidence to support the verdict.

The appellant and deceased were rural neighbors and had lived within two miles of each other in a rugged and sparsely settled section of Marion county for eleven years prior to the killing. Ashmead was killed in the late afternoon of November 20, 1945, while walking home from work at a sawmill located about two miles southwest of his home. He was shot in the back with a shotgun loaded with buckshot when he had reached a point about a quarter of a mile from his residence.

According to the testimony of the wife of deceased, she heard a gun fire about 5:30 p. m. In the words of witness: "We heard the gun fire and then he hollered and me and the children started to him. When I got there to where he was at I asked him what was the matter and he told me that he was shot, that Ben Riddle had shot him. He had got him this time. He was hid in that garden in the patch behind that tree and bunch of sprouts there and had shot him, and for me to look and I would find his tracks."

Mrs. Ashmead further testified that she immediately sent two of the children to the home of John King, a neighbor, for help. Her husband told her that he saw appellant behind a tree in some sprouts, and showed her where appellant ran off after the shot was fired. Later that night, she, in the company of an officer, examined the place pointed out to her by her husband by the tree and the vegetation was mashed and trampled down at this point. It was not dark when the gun fired and she could see her husband lying in the path for a considerable distance before she reached him. When John King, his three sons, and Arley Keeter arrived, her husband was getting weak and the party carried him to the house where he died about an hour later. She told the Kings and

Keeter that her husband had been shot, but did not tell them that appellant did the shooting.

The fourteen year old son and eleven year old daughter of deceased testified that, when they returned with the Kings, their father told them that the defendant shot him and that he saw the defendant in the garden behind the tree.

There was evidence of considerable trouble between appellant and deceased which began about four years prior to the killing, when a disagreement arose over the ownership of some hogs. In the spring of 1945, appellant suspected Ashmead of planting dynamite powder and dynamite wrappers in appellant's pasture for the purpose of killing his cattle, it being shown that cattle would eat the wrappers which were poisonous. At the request of appellant, the sheriff searched the premises of Ashmead's father where appellant suspected the dynamite had been secured, but nothing was found and further investigation failed to connect Ashmead with the planting of the dynamite wrappers.

Ashmead worked in the state of Washington for a time, but returned to his home in Marion county in August, 1945. Appellant made two or three trips to the sheriff and prosecuting attorney in the latter part of August complaining that someone was shooting around his house at night and that he suspected Ashmead. The sheriff refused to arrest Ashmead. On September 5, 1945, appellant procured the issuance of an insanity warrant for the deceased. It appears that the officers concluded there was no basis for the insanity charge, and what was designated as a "hearing" developed into a meeting of 12 or 15 friends and neighbors who had been summoned by the sheriff in an effort to make peace between the two men; and avoid serious trouble between them. According to the testimony of the sheriff, the parties "agreed to try to get along," as a result of this meeting.

There was also evidence that appellant accused Ashmead of poisoning his spring a day or two before the hear-

ing. He requested the sheriff to get Ashmead out of the community and paid an attorney a fee to get the state patrolman to persuade Ashmead to move. After Ashmead returned from Washington, appellant was seen by several persons at different places in the vicinity with a rifle. A bus driver testified that he saw appellant with the gun about a quarter of a mile from Ashmead's house about 5:30 p. m. on the day before Ashmead was killed.

Ashmead had been employed in the sawmill four weeks prior to his death. He usually rode to work in a truck, but was forced to walk to work on Monday and Tuesday of the week prior to the killing when the truck was not available. There was evidence that it took deceased about 30 minutes to walk from the mill to his home. Photographs were introduced without objection which give a clear picture of the scene of the killing. The path used by deceased follows the side of a rail fence until it reaches the corner of the fence within a few feet of the tree where the deceased stated that he saw appellant. Deceased was shot after he had reached a point about 40 or 50 feet from the corner of the rail fence. The only obstruction of the view revealed by the photographs at this point is the low rail fence and some sprouts growing near the tree where the assailant is alleged to have stood.

There was ample evidence that the statements of deceased were made under consciousness of impending death. We think the dying declarations of deceased together with the surrounding circumstances as set out above, when considered in the light most favorable to the state, were legally sufficient to warrant the jury in finding appellant guilty of the charge.

It is contended, however, that the trial court erred in the admission of the dying declarations. It may first be pointed out that appellant made no objection to the testimony of Mrs. Ashmead in which she related the dying statements of her husband. This court has held, even in cases where the defendant has been convicted of a capital offense, that objections must be made to the proceedings in the trial court in order to obtain a review of the alleged

errors in this court. *Morris* v. *State,* 142 Ark. 297. 219 S. W. 10; *Snead* v. *State,* 159 Ark. 65, 255 S. W. 895; *Sullivan* v. *State,* 161 Ark. 19, 257 S. W. 58; *Howell* v. *State,* 180 Ark. 241, 22 S. W. 2d 47.

It is earnestly insisted that it was dark and that, since deceased was shot in the back from a distance of 20 yards, it was physically impossible for him to have seen or recognized his assailant. In support of this contention, appellant relies on the case of *Jones* v. *State,* 52 Ark. 345, 12 S. W. 704. In that case deceased was shot at night by his fireside by someone who fired through a crack from the outside, and it was held that a declaration by deceased that a person other than defendant shot him was inadmissible, because a mere opinion, it having been a physical impossibility for the deceased to have seen who shot him. The court there said: "A mere expression of opinion by the dying man is not admissible as a dying declaration, and it is immaterial whether the fact that the declaration is mere opinion appears from the statement itself, or from other undisputed evidence showing that it was impossible for the declarant to have known the fact stated. If, upon any view of the evidence it is possible for the declarant to know the truth of what he states, his declarations, being otherwise competent, should be received and considered by the jury in the light of all the evidence."

It is also well settled that a dying declaration is only admissible to the extent that the deceased could have testified had he been alive at the time of the trial, and such declaration should not contain matter which would be excluded if the declarant were a witness. *Walker* v. *State,* 39 Ark. 221; *Rhea* v. *State,* 104 Ark. 162, 147 S. W. 463; Underhill's Criminal Evidence, 4th Ed. § 217. When tested by these rules, most of the dying statements attributed to Ashmead in the case at bar would have been competent testimony had he been alive, and on the stand, as a witness. Nor can we say, from all the circumstances, that it was physically impossible for the deceased to have seen or known who shot him. The testimony of Mrs. Ashmead to the effect that it was not dark when she reached

her husband is to some extent corroborated by the testimony of John King, a witness for appellant, who stated that it was "beginning to get a little dark" when the children reported the tragedy to him some 20 or 30 minutes later.

Nor does the fact that deceased was shot in the back necessarily preclude the admission of the dying declaration when considered in connection with the other facts in the case. As was stated by the Alabama court in *Marshall* v. *State*, 219 Ala. 83, 121 So. 72, 63 A. L. R. 560, "One may not see another shoot him in the back, and yet may look so quickly that what he sees justifies him in swearing as a fact that a certain person shot him in the back. This must be carefully distinguished from instances where he could not have known, but only expressed a surmise based upon suspicion."

The trial court did not err in admitting the statements attributed to Ashmead as dying declarations. After such statements are admitted, it is then the province of the jury to determine the circumstances under which they were made and the weight and credit that should be given to them. *Evans* v. *State*, 58 Ark. 47, 22 S. W. 1026; *Burns* v. *State*, 155 Ark. 1, 243 S. W. 963. The Kings and Arley Keeter testified on behalf of appellant to statements made by deceased which were similar to some of those testified to by Mrs. Ashmead, but none of these witnesses heard deceased say that appellant shot him, nor did they hear deceased make such statement to the deceased's two children. But these differences in the testimony of the witnesses were matters affecting the credibility to be given them by the jury as evidence in the case. *Gray* v. *State*, 185 Ark. 515, 48 S. W. 2d 224.

It is finally insisted that the trial court erred in the admission of the testimony of W. M. Markel and in failing to admonish the jury not to consider the testimony as well as the remarks of counsel for the state in connection therewith. Markel operated the sawmill where Ashmead was employed at the time of his death and testified that deceased had been working at the mill four weeks and worked 8 hours on the day he was killed. In answer

to a question by the prosecuting attorney as to his furnishing a truck for conveyance of the employees to and from work, Markel testified that the truck broke down and deceased walked to work on Monday and Tuesday of the week preceding the killing and that the truck broke down again, resulting in deceased being forced to walk to and from work the following week when he was killed. In the same answer to the question of the prosecuting attorney, Markel also testified that deceased told him that he could walk home in 20 or 30 minutes. Counsel for appellant objected to the testimony "because there is no connection with the issues in this case," and the objection was overruled. Upon cross-examination of the witness it developed that he was not present when deceased quit work on the day of his death, and counsel for appellant requested that all the testimony of the witness be excluded on the ground that there was no proof that appellant knew anything about the operation of the truck. After a colloquy between opposing counsel, the following ruling was made: "The Court: The court will let it go to the jury, and unless it is connected up, then the jury will be admonished not to consider it: Mr. Willis: All right." The record is silent as to any further ruling, or request for a ruling by the court on appellant's request for total exclusion of the testimony of Markel.

It was clearly competent for Markel to testify that Ashmead walked to and from work on the dates mentioned. This was a circumstance to be considered by the jury in connection with all the other facts and circumstances in evidence in determining whether appellant knew, or had an opportunity to know, the activities of the deceased. Markel's statement that deceased told him the time required to walk home was hearsay and incompetent, but no objection was made to the testimony on this ground. If such objection had been made, the court would doubtless have ruled it out. It also appears that other testimony had been admitted without objection to establish the time required for deceased to make the trip; therefore, no prejudice resulted to appellant. Since a part of the testimony was competent, it would have been

improper for the court to grant the request of appellant to exclude all the testimony of the witness. *Smith* v. *State,* 107 Ark. 494, 155 S. W. 508.

In the colloquy that took place between opposing counsel when appellant requested the court to exclude the testimony of Markel, special counsel for the state told the court that the testimony was offered on the theory that appellant knew Ashmead was using the route to his home; that appellant was familiar with the country, had been up there the day before with a gun and, profiting by his knowledge, had carefully laid and executed the crime. It is now insisted that this statement was highly prejudicial and that the trial court erred in failing to admonish the jury not to consider it. A careful examination of the record fails to disclose an objection by appellant to the statement made by special counsel, or a request for the court to admonish the jury not to consider such statement. The objections were made to the testimony of Markel, and not to the statement by counsel for the state of the theory upon which such testimony was offered. Since the objection was not made in the trial court, it may not be raised for the first time on appeal. Then too, there was evidence in the record from which the jury might have found that appellant knew that Ashmead was walking to and from his work. There was at least sufficient evidence to permit counsel for the state to present their theory of the case to the jury on this issue, and no error would have resulted from an argument to the jury based on the theory thus advanced by the state.

We find no prejudicial error in the record, and the judgment is affirmed.