Roger Allen HAMMON *v.* STATE of Arkansas

CR 98-525 2 S.W.3d 50

Supreme Court of Arkansas
Opinion delivered October 7, 1999

*Phyllis B. Worley*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kelly S. Terry*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant brings this appeal of his conviction for capital murder in the shooting death of Roger Cousins on May 29, 1998, urging that the trial court erred in admitting the victim's dying declaration naming appellant as his assailant. We find no error and affirm appellant's conviction and sentence of life imprisonment.

Roger Cousins was found on the edge of a highway outside Judsonia by Tommy Cole. Cousins had been shot four times in the back and called out to Cole as he drove by, "Please help me. I've been shot. I'm dying." Cole stopped his car and called 911 and requested assistance. Cole then heard Cousins say that a "Roger Hammon" had "shot me all to pieces." Upon the arrival of the police and being told that his wounds were life-threatening, Cousins replied, "I know," and said twice more that "Roger Hammon shot me."

According to testimony, Cousins and Hammon were together earlier in the evening in a car driven by Shirley Estes, Cousins's girlfriend and Hammon's cousin. Hammon took possession of the loaded gun that Estes carried under the driver's seat, and asked that she stop the car. Hammon fired one shot inside the car; Estes and Cousins dove out of the vehicle and Hammon chased Cousins, firing shots at him. Estes drove away from the scene and Cousins was later found beside the road near the scene of the shooting. Cousins was transported to the hospital, where he later died.

The State filed capital murder charges against Hammon, waiving the death penalty in the absence of aggravating factors. At trial, the medical examiner testified that analysis of the victim's urine revealed amphetamine, methamphetamine, amitryptyline, its metabolite noritriptyline, and cannabinoids. No drugs or alcohol were detected in the victim's blood. According to the medical examiner, a subject is only considered to be under the influence of drugs or alcohol when these substances are found in the bloodstream; the presence of such substances in the urine only indicates prior use. According to the toxicologist, that use could have been

as recently as six to eight hours prior to his death, but no longer than twenty-four hours previously. The witness offered a professional opinion that the victim did not have the substances in his body in a level that would seriously affect or intoxicate him.

Hammon was convicted of capital murder and sentenced to life imprisonment. From that verdict and sentence he brings this appeal, alleging a single point of error: that the trial court erred in allowing the testimony of Cole and two police officers of the victim's dying declaration that Hammon shot him, because Cousins was incompetent and his statement unreliable based on the presence of drugs in his urine.

■ ■ Pursuant to Ark. R. Evid. 802 (1999), hearsay is not admissible except as provided by law or by the rules of evidence. One exception to the hearsay rule is found in Ark. R. Evid. 804(b)(2), which provides that a statement made under the belief of impending death, commonly known as a dying declaration, is not excludable as hearsay if the declarant is unavailable as a witness. In order to qualify as a dying declaration under Ark. R. Evid. 804, the statement must have been made by a declarant while believing that his death was imminent, and it must concern the cause or circumstances of what he believed to be his impending death. *Thompson v. State*, 306 Ark. 193, 813 S.W.2d 249 (1991). The trial court determines whether a statement is admissible as a dying declaration, and this court will reverse that determination only if the trial court abused its discretion. *Id.* Dying declarations are deemed inherently trustworthy. The principal consideration upon which such statements are admitted is that one who realizes that death is inevitable in consequence of the injury inflicted speaks with solemnity and will not resort to fabrication in order to unjustly punish another. *Pinson v. State*, 210 Ark. 56, 194 S.W.2d 190 (1946).

Appellant makes no argument that the statements at issue do not meet those requirements of dying declarations; rather, appellant's argument centers on his contention that the dying declaration should be admissible only if it is otherwise reliable. In support of his argument, appellant cites two cases where we held that a dying declaration is only admissible to the extent that the

deceased could have testified had he been alive at the time of the trial, and such declaration should not contain matter which would be excluded if the declarant was a witness. *See Riddle v. State,* 210 Ark. 255, 196 S.W.2d 226 (1946); *Jones v. State,* 52 Ark. 345, 12 S.W. 704 (1889). Appellant urges that "competent" as used in those cases has the same meaning as "reliable," and that the victim's testimony in this case is unreliable because of the drug metabolites in his urine.

■ ■ We disagree with appellant's interpretation of the cited cases. Both cases concerned instances where the deceased victim was shot in the back, under circumstances where the victim could not possibly have seen his shooter. A mere expression of opinion by the dying person is not admissible as a dying declaration. *Riddle v. State,* 210 Ark. 255, 196 S.W.2d 226 (1946). In the cases cited above, the declarant's statement was incompetent because of lack of personal knowledge under Ark. R. Evid. 602, not because it was not "reliable," as appellant uses the term. If, upon any view of the evidence, it is possible for the declarant to know the truth of what he states, his declarations, being otherwise competent, should be received and considered by the jury in light of all the evidence. *Riddle, supra.* Competency, as referred to in Ark. R. Evid. 601, is not to be confused with reliability. Testimony by competent witnesses may be presented to the finder of fact. The jury then evaluates the evidence, considers the credibility of the witness, and arrives at its conclusion. The criteria for determining whether a witness is competent to testify are: (1) the ability to understand the obligation of an oath; (2) an understanding of consequences of false swearing; (3) the ability to receive and retain accurate impressions; and (4) the capacity to transmit a reasonable statement of what has been seen, felt, or heard. *Logan v. State,* 299 Ark. 266, 773 S.W.2d 413 (1989).

■ The testimony of the medical examiner was that drugs were present in the victim's urine but not in his bloodstream. The absence of the drugs from Cousins's blood indicated that they had already been metabolized and did not render Cousins intoxicated at the time of his death. According to the witness, one is "only intoxicated when alcohol or drugs are found in the blood. If they are found in any other body fluids, you're not under the influ-

ence." The testimony of the three persons who heard the declara-
tions was that Cousins was coherent: he spoke clearly, made sense,
was rational, and did not appear to be drunk. We have concluded
that Cousins was competent and thus his dying declaration was
admissible, and that the further question of credibility was for the
jury to consider.

■ We have previously rejected the argument that appel-
lant makes here. In *Missouri Pacific Rd. Co., Thompson, Trustee v.
Haigler, Admx.*, 203 Ark. 804, 158 S.W.2d 703 (1942), we held:

> Another assignment relates to the dying declaration of Haig-
> ler. It is contended that it was inadmissible, not on the ground
> that it was not made under a sense of impending death, but
> because, it is contended, that he was "suffering from shock and
> under the influence of opiates to such an extent as to render him
> incapable of knowing what he was doing or saying or of making
> the statement at all in fact." Such evidence is admissible under the
> conditions set out in 5201, Pope's Digest. We dispose of this
> assignment against appellant on the ground that there was sub-
> stantial evidence to show that he was conscious, and whether he
> was, or whether he made the statement testified to by his son-in-
> law, were questions of fact for the jury. *The same rule under the
> above mentioned statute in criminal cases is applicable to civil cases*, and,
> as we said in *Goynes v. State*, 184 Ark. 303, 42 S.W.2d 406,
> "whether the deceased was of sound mind when he made the
> statement was a question of the credibility rather than the admis-
> sibility of the declaration."

*Id.* (emphasis added). *See also Bramlett v. State*, 184 Ark. 808, 43
S.W.2d 364 (1931)(stating that the question whether victim who
made dying declaration was conscious of his language was for jury
to resolve in deciding the weight to give to testimony); *Gray v.
State*, 185 Ark. 515, 48 S.W.2d 224 (1932); *Riddle v. State*, 210
Ark. 255, 196 S.W.2d 226 (1946)(stating that jury decides weight
and credibility of dying declarations).

■ For a second contention under this point of error,
appellant urges that Cousins's dying declaration should have been
excluded pursuant to Ark. R. Evid. 403 (1999), which provides
that "[a]lthough relevant, evidence may be excluded if its proba-
tive value is substantially outweighed by the danger of unfair prej-

udice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* Determining the relevancy of evidence and gauging its probative value against the danger of unfair prejudice under Rule 403 are matters within the trial court's discretion, the exercise of which will not be reversed on appeal absent a manifest abuse of that discretion. *McLennan, supra.*

▮ Appellant contends that this evidence was more prejudicial than probative because the State had other means of proving its case, *i.e.*, the eyewitness testimony of Shirley Estes. This argument fails based on our previous holdings that the State is entitled to prove its case as conclusively as it can. *Regaldo v. State*, 331 Ark. 326, 961 S.W.2d 739 (1998). Appellant's reliance upon *Smith v. State*, 19 Ark. App. 188, 718 S.W.2d 475(1986)(en banc), and *Golden v. State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984), for the proposition that the probative value of evidence correlates inversely to the availability of other means of proving the issue for which the prejudicial evidence is offered, is misplaced. We recently limited the application of *Smith* and *Golden* to cases involving Ark. R. Evid. 404(b), involving evidence of other crimes and wrongs. *See Henry v. State*, 337 Ark. 310, 989 S.W.2d 894 (1999).

Because we find no error in the trial court's admission of the victim's dying declaration, that ruling is affirmed.

*Rule 4-3(h) Review*

As required by Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for other reversible error, and none has been found. Therefore, we affirm.

Affirmed.