Edward Sarbia REGALADO *v.* STATE of Arkansas

CR 97-1206                                           961 S.W.2d 739

Supreme Court of Arkansas
Opinion delivered February 5, 1998

*Baim, Gunti, Mouser, DeSimone & Robinson,* by: *Greg N. Robinson,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kelly Terry,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Edward Sarbia Regalado, was convicted of the first-degree murder of his wife, Gloria Regalado, and was sentenced to life in prison. He raises only one point on appeal — that the trial court erred in allowing evidence of Regalado's incarceration and escape. We hold that the evidence was admissible and that the prejudice from this testimony did not substantially outweigh its probative value. We affirm.

Prior to March 19, 1995, the date that Gloria Regalado's body was found, Regalado had been incarcerated in a federal halfway. house in Monroe, Louisiana, called the City of Faith. According to officials at the City of Faith, Regalado signed out at 6:00 a.m. on March 18, 1995, to go to Premiere Plaza, an office building, where he worked on the maintenance crew. He was due back at 6:30 p.m. The security supervisor explained at trial that Regalado did not return to the halfway house that night.

A case manager at City of Faith testified that Regalado had been placed on restrictive status after a December 31, 1994 visit with his wife, which resulted in a complaint that he assaulted her. The case manager also testified that Regalado received divorce papers from Gloria Regalado in January 1995 and that he was very angry about the increased restrictions on his freedom.

Stephen Nappier testified that on March 18, 1995, Regalado contacted him and asked whether he would take him to Lake Village to celebrate his son's birthday. Nappier testified that he picked Regalado up at the Premiere Plaza in Monroe that date at about 4:00 p.m. and drove to Lake Village. He testified that he

dropped Regalado off at a house he assumed belonged to his wife and children at about 6:30 p.m. Regalado told him that he would not need a ride back.

Eddie Regalado, Jr., who turned sixteen on March 19, 1995, testified that the relationship between his parents was characterized by much screaming and arguing. He testified that when his father arrived home on March 18, 1995, he found Gloria and forced her into a car and drove away. Eddie never saw his mother alive again. Eddie also testified that early in March 1995, he saw his father choking his mother and saying: "I'll kill you, bitch."

Chicot County Sheriff Floyd White testified that Gloria Regalado's body was found on March 19, 1995, south of Lake Village near some railroad tracks. The cause of death was subsequently determined to be a gunshot wound to the head with strangulation and a stab wound to the face being contributing factors. Gloria Regalado had numerous bruises and abrasions on her body. Sheriff White testified that his office had investigated prior incidents between Gloria Regalado and her husband. He testified that in October 1994, he and then Sheriff Sam Smith were approached by Gloria Regalado, who appeared scared and in fear of her life. She told them that if she was to be killed, they should look to her husband as the culprit. Sheriff White also testified that in the course of investigating drug cases, he suspected that Gloria Regalado was involved in the use and sale of drugs. He further opined that Gloria Regalado had been used as a confidential informant by the Drug Task Force on more than one occasion.

Sheriff's Deputy Edward Gilbert testified that after Gloria Regalado's body was found, a warrant was issued for Edward Regalado's arrest. Deputy Gilbert entered Regalado's name and a description of a white 1989 Chrysler New Yorker bearing Louisiana tags into the National Crime Information Center computer (NCIC). He stated that on March 22, 1995, his department was informed that Regalado had been taken into custody by the Mobile County Sheriff's Department in Alabama.

Sheriff's Deputy Alton Neidhardt of the Mobile County, Alabama Sheriff's Department testified that on March 22, 1995, he discovered Regalado sleeping behind the wheel of his car at

about 1:00 a.m. He testified that when he approached and asked for identification, he saw a razor blade between Regalado's legs, which Regalado explained he was going to use to remove a corn from his foot. After Deputy Neidhardt checked with NCIC, he learned that Regalado was wanted for escape in Louisiana and murder in Arkansas.

Don Williams, a longtime friend of Regalado, testified that he received three to five phone calls from him on the night of either March 19 or March 20, 1995. Sounding upset and nervous, Regalado asked Williams to call the Lake Village Police Department to determine whether his family was all right. He also asked Williams to call his sons' uncle and check on his two boys. Regalado purportedly told Williams that he was not going back to the halfway house and that he was looking for Gloria Regalado's boyfriend. When Williams asked him about his wife and the fact he was wanted for murder, he responded: "[W]ell, I've ended the relationship with Gloria. I've ended it."

Debbie Grisham, a friend of Gloria Regalado, testified that the victim was having an affair with Chris Floriani during the summer of 1994. She testified that during visits from Regalado in October and November 1994, Gloria Regalado told her she felt like a caged animal, and that she witnessed him grab her. When he was asking about Floriani and the victim would not respond, he said: "[O]ne shot and you won't lie anymore." She admitted that Gloria Regalado smoked crack cocaine.

The defense presented testimony that Gloria Regalado had bought and used cocaine and that once, two men pulled guns on her during an attempted buy in Lake Village because she owed them money. The theory of the defense was that Gloria Regalado was murdered in connection with her drug trafficking.

Regalado's sole argument on appeal is that the trial court committed reversible error by allowing the State to present evidence that he was incarcerated at the City of Faith and escaped. The trial court ruled that the evidence was admissible under both Arkansas Rules of Evidence 403 and 404(b). Regalado now contends that this evidence was introduced to place him in an unfavorable light and was unduly prejudicial. Moreover, according to

Regalado, evidence of his incarceration was not necessary for the State to prove its case. We disagree.

*a.  Rule 404(b)*

Rule 404(b) of the Arkansas Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b).

This court has recognized that the list of exceptions to inadmissibility under Rule 404(b) is not an exclusive list but represents examples where such crimes, wrongs, or acts would be relevant and admissible. *Lindsey v. State*, 319 Ark. 132, 890 S.W.2d 584 (1994) (plurality opinion). In *Lindsey*, it was explained:

> [I]f the introduction of testimony of other crimes, wrongs, or acts is "independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a cautionary instruction by the court." *White v. State*, 290 Ark. 130, 140, 717 S.W.2d 784, 789 (1986), quoting *Alford v. State*, 223 Ark. 330, 334, 266 S.W.2d 804, 806 (1954); *see also Price v. State*, 268 Ark. 535, 597 S.W.2d 598 (1980). Thus, if evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. *Sullivan v. State*, 289 Ark. 323, 711 S.W.2d 469 (1986).

*Lindsey v. State*, 319 Ark. at 138, 890 S.W.2d at 587.

We hold that the evidence of Regalado's incarceration at the halfway house and escape was probative of his motive, plan, and intent to murder his wife. *Cf. Ford v. State*, 276 Ark. 98, 633 S.W.2d 3 (1982) (allowing proof of escape as evidence to establish the appellant's motive to murder a state trooper); *State v. Oxford*, 791 S.W.2d 396 (Mo. 1990) (allowing evidence of escape to

establish motive for murdering two persons and taking their vehicle). Indeed, his escape with only 72 days left to serve appears to have been motivated by the fact that he sought an encounter with his wife, spurred on by jealousy. Thus, it had independent relevance and was not introduced purely to show that Regalado was a criminal. Moreover, Regalado could have asked for an instruction to the jury limiting consideration of this evidence solely to motive, plan, and intent, but he failed to do so. The trial court correctly allowed this evidence under the Rule 404(b) exceptions.

### b. Rule 403.

■ We further affirm the trial court's ruling under Rule 403 because the evidence about the halfway house and Regalado's escape was relevant and not unduly prejudicial. Relevant evidence may still be excluded under Rule 403, if its probative value is substantially outweighed by the danger of unfair prejudice. *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997); *Lindsey v. State, supra; Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). A trial court's decision in this regard will not be reversed absent a manifest abuse of discretion. *Id.*

In the case at hand, the escape evidence is an essential part of the facts surrounding the murder. In a similar case, when faced with the question of whether the jury should have been informed that the defendant escaped from a Florida prison hours before the victim was found murdered, the Louisiana Court of Appeal stated:

> [The defendant's] escape in Florida occurred approximately ten to eleven hours before he met the victim. The instant offense did not occur in a vacuum. The defendant's escape led to the commission of this offense and, without this evidence, "the complete story of the crime could not be told."

*State v. McGuire*, 577 So.2d 1120, 1123-24 (La. App. 1 Cir. 1991) (citations omitted). The court went on to hold that the Florida escape was admissible because (1) it proved motive and intent, and (2) it was an integral part of the subsequent murder and robbery of the victim. *Id.*

■ ■ This court has also held that all of the circumstances connected with a particular crime may be shown at trial, even if

those circumstances would constitute a separate crime. *See, e.g., Collins v. State,* 304 Ark. 587, 804 S.W.2d 680 (1991); *Henderson v. State,* 284 Ark. 493, 684 S.W.2d 231 (1985). In *Henderson,* we said: "[S]eparate and isolated crimes or facts may be shown to fully illustrate the circumstances connected with the charge being tried. When acts are intermingled and contemporaneous with one another, they may be proven as a part of the whole criminal scheme." *Henderson,* 284 Ark. at 497, 684 S.W.2d at 233 (citations omitted). Though some prejudice may have attached to the fact that Regalado escaped from a halfway house, the probative value of this evidence easily outweighed it. Furthermore, without the evidence of incarceration at the halfway house and the escape, there would have been confusion on the jury's part and unanswered questions such as why was Regalado separated from his wife and living in Louisiana and why was Louisiana searching for Regalado in addition to Arkansas.

▮ ▮ Regalado's chief argument is that the evidence of his incarceration was not necessary for his conviction in light of other evidence establishing his commission of the crime. This court, though, has held that the State is entitled to prove its case as conclusively as it can. *Harris v. State,* 265 Ark. 517, 580 S.W.2d 453 (1979). We perceive no manifest abuse of discretion in allowing this evidence at trial.

The record has been reviewed for other reversible error pursuant to Sup. Ct. R. 4-3(h), and none has been found.

Affirmed.