James Earl RYCHTARIK *v.* STATE of Arkansas

CR 98-3                                     976 S.W.2d 374

Supreme Court of Arkansas
Opinion delivered October 8, 1998

*David Wisdom Harrod*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant James Earl Rychtarik was convicted of second-degree murder, for which he received a sentence of ten years' imprisonment, and possession of a controlled substance with intent to deliver, for which he received a sentence of life imprisonment as a habitual offender. On appeal, we find no error and affirm.

In the early morning hours of July 30, 1995, appellant went to Jeffrey White's residence to collect money that White owed him for crystal methamphetamine. Appellant was under the influence of drugs at the time. They got into an argument, and appellant fatally shot White five times. After the shooting, appellant drove to a convenience store and called the police from a pay telephone. He was arrested for disorderly conduct and incarcerated until August 2, three days later, when he gave an inculpatory statement to the police.

Appellant's first point on appeal is that the trial court erred in denying his motion to suppress his statement given while in custody. Appellant argues that he lacked the mental competence to knowingly and intelligently waive his *Miranda* rights. Appellant claims that the confession was made while he was suffering from a psychosis or other medical or mental problem. He does not contest the voluntariness of his confession or that he executed a waiver of his *Miranda* rights, but contends that as a result of his mental condition, he lacked the capacity to knowingly and intelligently waive his rights.

Custodial statements are presumed to be involuntary, and it is the State's burden to prove by a preponderance of the evidence that a custodial statement was given voluntarily, and was

knowingly and intelligently made. *Humphrey v. State*, 327 Ark. 753, 760, 940 S.W.2d 860, 864 (1997). The relevant inquiry in this case is whether appellant waived his rights with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Sanford v. State*, 331 Ark. 334, 346, 962 S.W.2d 335, 341-342 (1998). The credibility of the witnesses who testify to the circumstances surrounding the defendant's custodial statement is for the trial court to determine. *Porchia v. State*, 306 Ark. 443, 448, 815 S.W.2d 926, 928 (1991). The trial court considered this issue at a pretrial hearing and denied appellant's motion to suppress the statement.

We make an independent review of the totality of the circumstances surrounding the waiver and reverse the trial court only if its decision was clearly erroneous. *Porchia*, 306 Ark. at 445, 815 S.W.2d at 928. The totality of the circumstances includes the age, experience, education, background, and intelligence of the defendant. *Sanford*, 331 Ark. at 345, 962 S.W.2d at 341.

Appellant was arrested on July 30, 1995. He gave a statement three days later in which he confessed to the crimes. On August 17, 1995, defense counsel moved to commit appellant to the Arkansas State Hospital for examination to determine his capacity to stand trial and his ability to appreciate the criminality of his conduct and to conform his conduct to the law at the time of the commission of the crimes. Appellant was not delivered to the State Hospital until January 9, 1996, five months later. In his report, Dr. Michael Simon, the supervising forensic psychologist, noted that appellant was of average intelligence, functioning at a level sufficient to stand trial. However, he concluded that appellant was suffering from "amphetamine-induced psychotic disorder with delusions." Dr. Simon further concluded in his report that appellant was not competent to assist his attorney in the conduct of his defense. Appellant stayed in the State Hospital for the remainder of the year. He was released when he was found competent to assist in his own defense and to understand the proceedings against him.

Dr. O. Wendall Hall, appellant's treating psychiatrist at the Arkansas State Hospital, testified that from the time of appellant's

arrival at the State Hospital, appellant "knew what he was charged with [and that he] was familiar with the different people involved in the legal system, the Judge, the attorneys, the juries, and things of that sort."

Both Dr. Simon and Dr. Hall, who were witnesses at the suppression hearing, declined to give an opinion as to whether appellant was mentally competent to waive his *Miranda* rights at the time of his confession. They indicated that they did not observe him on that day, but rather five months later, and were not asked to evaluate him on that question. Dr. Hall did testify that appellant could have recovered from his intoxication at the time of the crime by the time he gave his statement three days later.

The two officers who took appellant's confession, Jack Allen and Dennis Norton, also testified. Officer Allen said that he advised appellant of his rights according to the waiver-of-rights form, in the usual way, he read aloud each right and had appellant write the word "yes" beside each statement of right if appellant understood it. Appellant signed the waiver form at the bottom. Officer Allen testified that he made no promises or threats and that he believed that appellant understood his *Miranda* rights. He further stated that a lot of what appellant was saying was strange, but that it was not unusual for a criminal defendant to pick a "theme." Officer Allen testified that he believed that appellant, at the time of the statement, was down from the drugs and was completely coherent and understood what was going on. He also testified that appellant exercised his *Miranda* rights during his statement by saying he wanted to "shut up."

Additionally, Officer Allen testified that appellant's statement contained considerable factual information that was confirmed by police and crime lab investigation. Appellant described the gun he used as a .357 magnum and said that he had taken it from a friend's bedroom. At trial, the friend testified that he kept that type of gun in a cabinet in his bedroom, that appellant had been at his house only a few days before the shooting, and that he discovered the gun was missing after he heard about the shooting. Ballistics tests performed by the State Crime Laboratory confirmed

that the .357 magnum that appellant claimed that he took was the weapon used to kill White. Additionally, appellant told the police where he had disposed of the gun, and the police found it exactly in the place he described.

Appellant also stated that when he went to White's house to collect the money, he recalled that White's "wife," Sue, was at the house along with a baby. Angela Sue Grant, who lived with White, testified that she and her one-year-old grandson were present when appellant came to their house the day of the shooting. Moreover, appellant said that he believed his first shot had hit White in the mouth. Dr. William Sturner, the state medical examiner, testified that White had a gunshot wound to the face on the right side of his nose. Appellant also accurately described White's body as lying face down on the floor.

Dr. Hall testified that the main effects of acute intoxication from methamphetamine ingestion were gone by the time appellant gave his statement. In addition, Officer Allen testified that appellant appeared to be coherent and "completely down" from the influence of drugs. He observed that although some of the things appellant related in his statement indicated delusions at the time of the criminal acts, appellant was specific about details that were later confirmed by other sources. Appellant also related significant factual detail to show that he understood what was going on. Also, appellant exercised his *Miranda* rights when he stated, "I'm wanting to shut up."

Therefore, based on the totality of the circumstances, we conclude that the trial court's determination that appellant made a knowing and intelligent waiver of his *Miranda* rights was not clearly erroneous and we affirm.

Appellant next contends that the trial court erred when it refused to order the State Hospital to evaluate, from the volumes of material in its possession, appellant's competence to waive his rights at the time he gave his statement to the police. Appellant claims that he was entitled to have a psychiatric evaluation to determine his competency to waive his rights based on *Ake v. Oklahoma*, 470 U.S. 68 (1985), and Ark. Code Ann. § 5-2-305 (Repl. 1997). Appellant's reading of *Ake* is misplaced. In *Ake*, the

Supreme Court held that a defendant, who demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, must be assured access to a competent psychiatrist, if the defendant cannot otherwise afford one. The psychiatrist will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense. *Ake*, 470 U.S. at 74, 83.

■ Section 5-2-305 of Ark. Code Ann. (Repl. 1997) codifies the *Ake* decision. It provides that "when there is reason to believe that mental disease or defect of the defendant will or has become an issue in the cause[,]" the court shall enter an order directing the defendant to undergo a psychiatric evaluation. *Id.* The purpose of this section is "to prevent the trial of any person while incompetent to understand the nature of the procedures involved and to assist in the defense thereof; . . . and to prevent the trial of a person who lacks the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the offense. *See* § 5-2-305, Editors Notes.

■ In this case, appellant was provided a psychiatric evaluation that conformed to the *Ake* and section 5-2-305 requirements. He was evaluated at the Arkansas State Hospital for thirty days and found to be incompetent to assist in his defense at that time. Further, we note that appellant withdrew his defense of mental disease or defect prior to trial, thereby eliminating the question of his sanity from the issues considered at trial. Also, the expert testimony of Dr. Hall and Dr. Simon of the Arkansas State Hospital was considered by the trial judge as part of the totality of circumstances relating to whether the appellant's custodial statement was knowingly and intelligently made. Based on the foregoing reasons, we affirm the trial court's denial of an additional psychological evaluation to address the issue of appellant's competence to waive his *Miranda* rights.

Appellant's final point on appeal is that the trial court erred in denying his motion for a mistrial, or alternatively, a continuance based on the absence of exculpatory evidence that he claims prejudiced his case. Before trial, appellant filed a motion for dis-

covery and disclosure, asking specifically for any exculpatory evidence in the State's possession. During the trial, a newspaper reporter who was present outside the courtroom told defense counsel that White's parents had mentioned to him that Angela Sue Grant had threatened to kill Jeffrey White on numerous occasions.

Pursuant to our rules of criminal procedure, the prosecution is required to disclose all information in its possession that could be exculpatory to the defense. Ark. R. Crim. P. 17.1. The rule provides the following:

> Subject to the provisions of Rule 19.4, the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefore.

Ark. R. Crim. P. 17.1(d). Rule 17.1 imposes a duty to disclose information in sufficient time to permit the defense to make a beneficial use of it, and a failure to comply may be cured by granting a continuance or by recessing the trial until appellant's attorney can have an adequate interview with the witnesses. *Dupree v. State*, 271 Ark. 50, 56, 607 S.W.2d 356, 360 (1980).

Under Ark. R. Crim. P. 19.7, if the court learns that a party has failed to comply with a discovery rule, the court may exercise any of the following options: order this party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing the material, or enter another order that the court deems proper under the circumstances. It is within the trial court's discretion which sanction to employ. *Reed v. State*, 312 Ark. 82, 88, 847 S.W.2d 34, 35 (1993). When testimony is not disclosed pursuant to pretrial discovery procedures, the burden is on the appellant to establish that the omission was sufficient to undermine confidence in the outcome of the trial. *Scroggins v. State*, 312 Ark. 106, 116, 848 S.W.2d 400, 405 (1993). The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Id.* Absent a

showing of prejudice, we will not reverse. *Id.* (citing *Hall v. State,* 306 Ark. 329, 332, 812 S.W.2d 688, 690-691 (1991)).

The trial judge stopped the trial and held a hearing on the motion for mistrial or continuance. Appellant contends that with the witnesses who testified for the defense at the hearing, he might, if given more time to develop the evidence, have been successful in planting a reasonable doubt in the minds of the jury that he killed White. This evidence, he argues, together with the evidence that there were no fingerprints on the gun and that the gunshot-residue test on appellant was negative but the test on Grant was inconclusive is enough to raise a reasonable doubt.

We have said that a defendant in a criminal case cannot rely upon discovery as a total substitute for his own investigation. *Dupree,* 271 Ark. at 55, 607 S.W.2d at 360. Appellant's counsel knew the identity of the potential witnesses and could have chosen to interview them and could have investigated the police files from other jurisdictions.

A mistrial is a drastic remedy and appropriate only when the error is beyond repair and cannot be corrected by any curative relief. *Esmeyer v. State,* 325 Ark. 491, 497, 930 S.W.2d 302, 306 (1996). The trial court has broad discretion in deciding the issue. *Id.*

We conclude that because appellant did not prove prosecutorial misconduct, the trial court did not abuse its discretion in denying the motion for mistrial or continuance.

We also note that had the exculpatory evidence been given to appellant earlier, it is uncertain whether it would have been relevant. Evidence incriminating others is not relevant to prove that the defendant did not commit the crime charged, unless it points directly to the guilt of the third party. *Zinger v. State,* 313 Ark. 70, 75, 852 S.W.2d 320, 323 (1993) (quoting *North Carolina v. Wilson,* 367 S.E.2d 589 (N.C. 1988)). Evidence that does no more than create an inference or conjecture as to another's guilt is inadmissible. *Id.* Evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defend-

ant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. *Id.* (quoting *People v. Kaurish*, 802 P.2d 278 (Cal. 1990)).

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.