Bobby Don HENRY *v.* STATE of Arkansas

CR 98-569 989 S.W.2d 894

Supreme Court of Arkansas
Opinion delivered April 22, 1999
[Petition for rehearing denied May 27, 1999.]

*Sexton & Fields, PLLC,* by: *Daniel Shue,* for appellant.

*Winston Bryant,* Att'y Gen., by: *C. Joseph Cordi Jr.,* Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Bobby Don Henry brings this appeal from his first-degree murder conviction for which he received a sentence of life imprisonment. On December 15, 1996, Henry shot Larry Williams at Henry's house while Henry's wife, Regina, and son, Roman, were present. After the shooting, Regina and Roman ran to the neighbors', Ava

and Jim Snows's, house, exclaiming that Henry had killed Williams. The Snows allowed Regina to make a 911 call; as a result, law officers came to the Henry house to investigate. Henry was subsequently arrested and charged with capital murder. Before and at trial, Henry raised insanity and self-defense claims, which the jury rejected upon finding Henry guilty of first-degree murder.

Henry first submits that the trial court erred when it allowed the State to introduce the entire 911 tape that contained Regina's call following Henry's shooting of Williams. At trial, Henry objected to the tape as being irrelevant, but, if relevant, argued the tape was more prejudicial than probative because Regina's voice sounded "hysterical." He argued prejudice resulted from the "method" (manner) Regina reiterated "things." Henry also objected and moved for mistrial because the thirty-four-minute tape contained prejudicial remarks by other persons besides Regina. The prosecutor countered that the tape was relevant to show what Regina did, when she did it, how she did it, the time frame, where she went, and where the call was from. The trial court ruled the tape was relevant and was not more prejudicial than probative.

Without specifying which parts, Henry concedes on appeal that some of the tape was relevant, but directs his argument to the unfair prejudice he claims he suffered from the tape's introduction. The remarks of Regina of which Henry complains are as follows:

1. Henry has "lots of guns in the house."

2. Henry "has guns and we have guard dogs."

3. "Yes, we have lots of weapons. He's got — it's a black gun and you pull the trigger, and it will shoot, like six . . . ."

4. "I don't want to put these people's lives in danger, sir."

5. "Just make sure that these policemen know that he does have a lot of weapons."

6. "He has the M16."

7. "He has an SKS assault rifle."

8. "I want [inaudible due to background conversations] something happen to me."[1]

9. "Do you think he's crazy? He has to be. Someone just doesn't do stuff like that."

10. "But, he has more bullets. He was reloading as we left. He has got a houseful [inaudible because of background conversation]."

11. "I want you guys to be very careful. I'm telling you, he has probably 1,000 rounds of ammunition."

12. "He's got a lot of guns and a lot of ammunition."

In addition to Regina's foregoing remarks, Henry lists as prejudicial the following comments on the 911 tape attributed to other unidentified voices:

1. A male voice that dispatched "all units."

2. An unidentified woman asking whether Henry was drinking and then advising, "don't go in."

3. Officer Huber commenting, "He's got all kinds of weapons at the residence where he's at."

4. Huber advising, "Don't let anybody in the house, okay?"

5. The 911 operator saying, "He does have a lot of weapons, right."

6. The operator stating, "I know you're scared to death."

7. The operator stating, "I've seen a lot of grody [sic] stuff" and "a lot of nasty stuff" and "it's horrifying."

8. The operator stating, "Because you have stated several times, he is dangerous."

In asserting the prejudicial nature of the 911 tape and comments listed above, Henry recognizes the recent case of *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996), where the court

---

[1] Appellant asserts the conversation following this statement implies that Regina was concerned something bad was going to happen to her and wants to notify her mother.

upheld the trial court's admission into evidence a 911 tape that contained the voice of the victim whose house had just been unlawfully entered and who described the vehicle in which the suspects (including Passley) had fled. Passley argued that, among other things, the "frantic" tone of the victim's voice was unfairly prejudicial. The *Passley* court ruled the tape admissible as an excited utterance under A.R.E. Rule 803(2), and found no reversible prejudice in admitting such relevant evidence. The court pointed out that Passley offered no legal authority as to how the victim's alleged "frantic voice" inflamed the jury and presented reversible error.

 Here, Henry attempts to distinguish his case from the *Passley* decision, stating that, in *Passley*, (1) the defendant was charged with many more crimes, (2) the tape's admission explained why law enforcement officers were in the victim's area searching for a particular car, (3) the victim made the 911 call, and (4) no discussion was made of the prejudicial nature of the call itself. As stated previously, Henry concedes, we think correctly so, that the 911 tape at issue here contains relevant evidence. Like the declarant in *Passley*, Regina made an excited utterance admissible under A.R.E. Rule 803(2) that she and her son had just witnessed Henry's killing of Williams. This court has long held that all of the circumstances connected with a particular crime may be shown, even if these circumstances constitute a separate crime. *Regalado v. State*, 331 Ark. 326, 961 S.W.2d 739 (1998); *Collins v. State*, 304 Ark. 587, 804 S.W.2d 680 (1991); *see also* A.R.E. Rule 803(1) (making admissible a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter). In short, Regina, in her excitement and while still under the stress of it, described the startling shooting event that she had just witnessed. In addition, Regina's conversations with others on the tape merely completed the picture and explained where the shooting took place and the dangers she and others might confront following the crime.

Henry further states that, by examining Regina at trial, the State could have proven its case in a much less prejudicial manner than introducing what he labels "the highly prejudicial 911 tape."

Henry analogizes his situation to the one in *Berry v. State*, 290 Ark. 223, 718 S.W.2d 447 (1986), where the court rejected a trial court's carte blanche approach to the admission of relevant, but inflammatory photographs. Henry, citing *Smith v. State*, 19 Ark. App. 188, 718 S.W.2d 475 (1986), urges us to follow the rule adopted by the court of appeals that the probative value of evidence correlates inversely to the availability of other means of proving the issue for which the prejudicial evidence is offered. *Id.* In other words, if the State has no other means to prove the issue, then the evidence is highly probative, and that may outweigh its prejudicial effect. *Id.* However, in cases where the State has other means of proving the issue, the balance is tripped in favor of being excluded because of its prejudicial effect. *Id.*; *Golden v. State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984); *see also Rudd v. State*, 308 Ark. 401, 825 S.W.2d 565 (1992).

■ We disagree with Henry's argument because *Golden* and *Smith* involved A.R.E. Rule 404(b) situations where the State's evidence involved other crimes, wrongs, or acts. In the instant case, the State's evidence concerns no criminal wrongs or acts and instead describes only the shooting with which Henry was charged and the circumstances — none criminal — that followed the shooting event. A second reason for rejecting Henry's arguments, which we alluded to earlier, is the fact that the conversations on the tape were relevant evidence that described the crime. This court has repeatedly held that the State was entitled to prove its case as conclusively as it could. *Jarrett v. State*, 336 Ark. 526, 986 S.W.2d 101 (1999); *Harris v. State*, 265 Ark. 517, 580 S.W.2d 453 (1979); *Reeves v. State*, 263 Ark. 227, 564 S.W.2d 503 (1978). Of course, the State must still comply with the rules of evidence in proving its case, but the State did so here.

■ Henry claimed self-defense and the defense of insanity. Obviously, that portion of the 911 tape where Regina referred to Henry being "crazy" was not prejudicial to him, since it was consistent with Henry's insanity defense. In addition, Regina's expressed fears on the tape that she and others could be in danger tended to strengthen the State's case that Henry was fully armed and acted with premeditation and deliberation when he shot Williams. This proof, along with Regina's and Roman's versions that

Williams had no gun, tended to show that Henry did not act in self-defense as he claims. Thus, while relevant evidence may be excluded under A.R.E. Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, that is not the situation now before us. In sum, we cannot say that the trial court abused its discretion in admitting the 911 tape into evidence. *Regalado*, 331 Ark. at 332-33, 961 S.W.2d at 742-43.

In his second point for reversal, Henry submits the State violated Ark. R. Crim. P. 17 by withholding from Henry an offense report which was prepared as a result of a fight that took place between Larry Williams and a man named Darrow Tritt six weeks prior to the date Henry shot Williams. The report reflected that Williams allegedly battered Tritt and that the battery had been witnessed by Henry, Regina Henry, and a woman named Lorretta Sinclair. Apparently, Henry interceded on Tritt's behalf to protect him. During trial, Henry learned of the existence of the report and that it had been filed with the Logan County Sheriff's Office.

Rule 17.1 imposes a duty on the prosecutor to disclose all information in its possession that could be exculpatory to the defense. This information must be disclosed in sufficient time to permit the defense to make beneficial use of it. *Rychtarik v. State*, 334 Ark. 492, 976 S.W.2d 374 (1998). Ark. R. Crim. P. 19.7 provides that if the court learns that a party has failed to comply with a discovery rule such as Rule 17.1, the court may order the party to permit the discovery or inspection of the materials not previously disclosed, grant a continuance, prohibit the party from introducing the undisclosed material, or enter such order as it deems proper under the circumstances. Because the report was not made known to Henry's counsel, Henry moved for a mistrial.

The trial court agreed that the report was in the sheriff's possession, that it was relevant, and that the retention of the report resulted in prejudice to Henry. However, rather than granting a mistrial, the trial court gave Henry a ten-day continuance to permit him time to interview the witnesses who observed Williams's earlier battery of Tritt. Henry argues the continuance failed to cure any prejudice he suffered because the belated revelation of the report precluded him from utilizing the report in his voir dire of

the jury and in using that information in his opening statement. Henry cites two cases, *Pridgeon v. State*, 262 Ark. 428, 559 S.W.2d 4 (1977), and *Strobbe v. State*, 296 Ark. 74, 752 S.W.2d 29 (1988), where, he argues, relevant evidence was similarly denied defendants and reversible error was found because the defendants were respectively denied the opportunity to pose questions to prospective jurors and denied the right to voir dire the jury or properly prepare their cases.

██ ██ We recently reiterated the settled rule that a defendant in a criminal case cannot rely upon discovery as a total substitute for his own investigation. *Rychtarik*, 334 Ark. at 501, 976 S.W.2d at 379. We also repeated the long-settled rule that a mistrial is a drastic remedy and appropriate only when the error is beyond repair and cannot be corrected by any curative relief. *Id.*

██ Henry was well aware of Williams's earlier attack on Tritt since he was present at the time and aided Tritt. Whatever value the incident between Williams and Tritt had in supporting Henry's self-defense claim was well known by Henry at the time he voir dired the jury and made his opening statement. In addition, the trial court gave Henry ample time to interview the other witnesses to Williams's fight with Tritt; in fact, Henry interviewed Sinclair on the subject during the continuance, yet, he fails to make clear how not having the report prejudiced his case when he not only knew of the Williams-Tritt incident, but also had access to those who observed it. For these reasons, we hold the trial court did not abuse its discretion in awarding Henry a continuance in these circumstances.

In his final argument, Henry contends the trial court erred in failing to grant his motion for mistrial because of prosecutorial misconduct during opening statement. In particular, he argues the prosecutor improperly made the following two references pertaining to Henry's smoking of marijuana on the day of the shooting:

> (1) "They [Henry and Williams][stood] outside for ten, twenty minutes talking, smoking some marijuana;" and

> (2) "Business deals going bad, smoking marijuana and everything is going on."

Henry submits that, while the prosecutor mentioned the above references in his opening statement, the State rested its case without introducing any evidence to support those remarks. The omission of such evidence, Henry argues, prompted him to move for a mistrial. In support of his argument, Henry relies on *Timmons v. State*, 286 Ark. 42, 688 S.W.2d 944 (1985), for the proposition that a prosecuting attorney should not be tempted to appeal to prejudices, pervert testimony, or make statements to the jury which, whether true or not, have not been proved.

■ Henry's reliance on *Timmons* is misplaced. First, we point out that it is not uncommon for an attorney to outline in an opening statement what he or she anticipates the testimony is going to be, and then, in view of developments in the trial, decide not to produce that evidence. *Nolen v. State*, 278 Ark. 17, 643 S.W.2d 257 (1982). But more important here, Henry acknowledges the prosecutor presented evidence bearing on the references to Henry's use of marijuana via the State's rebuttal witness, Dr. John Anderson.

Dr. Anderson's testimony was offered by the State to rebut Henry's insanity defense. In his case-in-chief, Henry called defense witness Dr. Margarita Garcia, who testified that, in her opinion, Henry was psychotic and unaware of the nature of his actions when he shot Williams. Dr. Anderson, on the other hand, opined Henry had the ability to appreciate the wrongfulness of his behavior at the time of the crime. As a part of his evaluation and in his report, Dr. Anderson repeated Henry's remarks, whereby he admitted having smoked marijuana with Williams before the shooting event. Although Henry apparently never revealed to Dr. Garcia that he had smoked marijuana on the day of the shooting, she opined that if there had been evidence that Henry had been under the influence of drugs which caused his psychosis, such evidence would have affected her clinical opinion. Clearly, Henry and the State knew the relevance of the marijuana references and how those references related to Henry's insanity defense.

■ In sum, Henry was informed well in advance of trial that Dr. Anderson's report and mental evaluation contained Henry's admissions of having smoked marijuana on the day he

shot Williams. Thus, when the State mentioned the two marijuana references in its opening statement, it could have been of no surprise where that information was contained. In a pretrial order, the trial court entered an order stating Henry had raised an insanity defense, and Dr. Anderson's aforementioned report, including Henry's remarks, was available to Henry long before Henry's trial commenced. We fail to see how the State erred either in mentioning the marijuana references when it did or in introducing the evidence or report proving those references on rebuttal.

The record in this case has been examined for errors prejudicial to the defendant in accordance with Ark. Sup. Ct. R. 4-3(h), and no reversible errors have been found.

For the above reasons, we affirm.