Arthur BLEDSOE Jr. *v.* STATE of Arkansas

CR 00-799                                                    39 S.W.3d 760

Supreme Court of Arkansas
Opinion delivered March 8, 2001

*Michael B. Dabney Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Arthur Bledsoe Jr. appeals the order of the Mississippi County Circuit Court convicting him of rape. Following his conviction, Bledsoe was sentenced to a term of life imprisonment in the Arkansas Department of Correction. Appellant's only point on appeal is that the trial court erred in allowing evidence of two burglaries during his trial. This court previously reversed Appellant's conviction of rape in *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2) and (7). We affirm.

The pertinent facts were set out in *Bledsoe* as follows:

> During the early morning hours of July 11, 1996, Ms. Jennifer Gann was forcibly raped when a man entered her home through a back window and threatened her with a gun. Mr. Bledsoe's fingerprints were recovered from a window screen and DNA evidence was consistent with the allegation that Mr. Bledsoe was the perpetrator. Also on July, 11, 1996, Mr. Robert Godsey discovered that a Harrington & Richmond .22 caliber pistol with a long barrel and brown scabbard had been stolen from his home along with jewelry, a VCR, and a pink flashlight.
>
> On the evening of July 12, 1996, a grocery store owned by Ms. Louise Heaton was broken into and several cartons of cigarettes, six-packs of beer, candy, cookies, and cigarette lighters were stolen. The investigation of these burglaries led police to Mr. Aaron Allen, who told the police that he purchased a .22 caliber gun from Mr. Bledsoe for $30 one week after the rape occurred. The gun was identified as that stolen during the Godsey burglary. Other evidence recovered by the police during the rape investigation linked Mr. Bledsoe to yet another burglary.

*Id.* at 405, 989 S.W.2d at 511-12.

On remand from this court's reversal, Appellant was again convicted of rape. After deliberating for approximately three hours,

the jury deadlocked during the sentencing phase of the trial. The trial court then imposed a sentence of life in prison. This appeal follows.

## Evidence of Other Crimes

For his only point on appeal, Appellant argues that it was error for the trial court to admit evidence of two burglaries during his rape trial. Specifically, Appellant alleges that the State did not need the burglary evidence, and that even if such evidence was relevant, its probative value was outweighed by its prejudicial effect, and thus should have been excluded under Arkansas Rule of Evidence 403. Appellant filed a motion in limine seeking to exclude any testimony about his alleged involvement in the Godsey and Heaton burglaries. The trial court denied the motion with regard to the Godsey burglary. The trial court ruled that information that the Godsey residence was two blocks away from Mrs. Gann's home, that the burglary occurred a couple of hours prior to the rape, and that items stolen from the residence were later tied to Appellant were relevant. With regard to the Heaton burglary, the trial court ruled that the only information that was relevant was the fact that police had a legitimate reason to contact Appellant and question him with regard to the rape. Specifically, the State was allowed to elicit testimony that a witness to the Heaton burglary purchased a gun from Appellant one week after the rape of Mrs. Gann. Appellant relies on a decision by the Arkansas Court of Appeals in *Golden v. State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984), to support his argument that evidence from the Godsey burglary was inadmissible. We reject this argument.

In *Golden*, the court of appeals held that the admission of evidence of other convictions warranted reversal because such evidence was prejudicial under Rule 403, particularly in light of the fact that the State had other means of proving its case. There, the court of appeals stated:

> With the availability to the State of other means of proving appellant Golden's specific intent and in the highly prejudicial nature of the three prior guilty pleas, the convictions should not have been admitted. In terms of Uniform Rule of Evidence 403, the "probative value" of the three prior guilty pleas was "substantially outweighed by the danger of unfair prejudice."

*Id.* at 368, 664 S.W.2d at 499. This court has previously limited the application of *Golden* to those situations involving the admissibility of evidence of other crimes and wrongs. *See Hammon v. State,* 338 Ark. 733, 2 S.W.3d 50 (1999). As we now review the decision in *Golden,* we realize that its holding is in direct conflict with our well-established principles of law. This court has consistently held that the State is entitled to prove its case as conclusively as it can. *See Henry v. State,* 337 Ark. 310, 989 S.W.2d 894 (1999); *Regalado v. State,* 331 Ark. 326, 961 S.W.2d 739 (1998). Moreover, the decision in *Golden* conflicts with this court's application of the harmless-error rule. This court has routinely held that where evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm. *See Kidd v. State,* 330 Ark. 479, 955 S.W.2d 505 (1997); *Abernathy v. State,* 325 Ark. 61, 925 S.W.2d 380 (1996). Accordingly, we overrule *Golden.*

Here, the trial court found that the evidence of the Godsey burglary was admissible because it was part of the *res gestae* of the rape. The State had DNA evidence linking Appellant to the crime, as well as Appellant's own admission that he was present at the crime scene. Appellant insisted, however, that he engaged in con-sensual sex with Ms. Gann. Information about the gun being stolen from the Godsey residence and that same gun being linked to Appellant provided evidence to dispute Appellant's contention that the act was consensual. Moreover, testimony was elicited about a flashlight that was also stolen from the Godsey residence. This item was independently linked to Appellant, and was later discovered in a bag containing a pair of work gloves. This information lends credence to Mrs. Gann's version of events. Specifically, Mrs. Gann testified that the man who attacked her was wearing yellowish, rough leather work gloves. She also testified that the attacker used a small flashlight off and on during the crime.

This court recently addressed the law on admission of *res gestae* evidence in *Gaines v. State,* 340 Ark. 99, 8 S.W.3d 547 (2000). There we said:

> [T]he general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused; however, evidence of other crimes is admissible under the *res gestae* exception to the general rule to establish the facts and circum-stances surrounding the alleged commission of the offense. *Haynes v. State,* 309 Ark. 583, 832 S.W.2d 479 (1992); *Young v. State,* 269 Ark. 12, 598 S.W.2d 74 (1980). Under the *res gestae* exception, the

State is entitled to introduce evidence showing all circumstances which explain the charged act, show a motive for acting, or illustrate the accused's state of mind if other criminal offenses are brought to light. *Haynes v. State, supra.* Specifically, all of the circumstances connected with a particular crime may be shown to put the jury in possession of the entire transaction. *Haynes v. State, supra.* Where separate incidents comprise one continuing criminal episode or an overall criminal transaction, or are intermingled with the crime actually charged, the evidence is admissible. *See Ruiz & Van Denton v. State,* 265 Ark. 875, 582 S.W.2d 915 (1989); *Thomas v. State,* 273 Ark. 50, 615 S.W.2d 361 (1981); *Henderson v. State,* 284 Ark. 493, 684 S.W.2d 231 (1985). *Res gestae* testimony and evidence is presumptively admissible. *Henderson, supra; Lair v. State,* 283 Ark. 237, 675 S.W.2d 361 (1984); *Love v. State,* 281 Ark. 379, 664 S.W.2d 457 (1984); *Hobbs v. State,* 277 Ark. 271, 641 S.W.2d 9 (1982).

340 Ark. at 110; 8 S.W.3d at 554. Clearly, the evidence of the Godsey burglary falls within the *res gestae* exception. The burglary evidence established the facts and circumstances surrounding the rape of Mrs. Gann, and thus, the trial court did not abuse its discretion in admitting this evidence.

As for the Heaton burglary, during the pretrial hearing on Appellant's motion in limine, the trial court held that the State was limited to eliciting testimony about the fact that police, in investigating the burglary, interviewed a witness who admitted to purchasing a gun from Appellant that had been stolen from the Godsey residence. During its case in chief, the State limited evidence about the Heaton burglary as ordered by the trial court. During rebuttal, however, the State called Louise Heaton who testified that some beer and cigarettes were stolen from her grocery store. Mrs. Heaton also identified a green bag that was taken from her store. She testified that this specific bag was unique in that it was obtained in connection with maintaining a display of Irish Spring products in her store. The bag was recovered by police while investigating Appellant and contained the gun, gloves, and flashlight stolen from the Godsey residence, as well as clothing and other items belonging to Appellant. Appellant admitted that the bag was his.

Appellant never objected to the testimony of Mrs. Heaton at trial. The only argument that Appellant now makes on appeal with regard to the Heaton burglary is that the State did not need to use Mrs. Heaton. It is well settled that a party who does not object

to the introduction of evidence at the first opportunity waives such an argument on appeal. *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998); *Wilburn v. State*, 317 Ark. 73, 876 S.W.2d 555 (1994). The policy reason for this rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *Id.* Thus, we do not consider any allegations of error with respect to the Heaton burglary.

## Ex Parte *Communications*

Pursuant to the requirements of Ark. Sup. Ct. R. 4-3(h), the State brings to our attention the fact that the record contains some evidence that the trial court engaged in *ex parte* communications with the jury.[1] The State asserts, however, that any such communication did not actually prejudice Appellant, because the jury never agreed on a sentence to be imposed. Arkansas Code Annotated § 16-89-125(e) (1987) provides:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties.

The record reflects that while the jury was deliberating on a punishment, the following colloquy took place:

> THE COURT: The foreman of the jury, after about 30 minutes of deliberation, summonsed the court and the attorneys. They had a question. And the question was, "What if we can't agree unanimously upon the punishment?" And I told them that they would have to be unanimous on the punishment in order to return a verdict and let it go at that.

---

[1] Appellant never raised any objection regarding any *ex parte* communication at the trial level; nor does Appellant raise such an argument on appeal. In *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997), this court rejected the state's contention that the appellant's failure to object to an *ex parte* communication below prevented the court from considering such an issue on appeal. This court held that a fundamental right was at issue, and the trial court's failure to comply with Ark. Code Ann. § 16-89-125(e) resulted in the appellant and her counsel both being absent when a substantial step was taken in her case and, as such, was an exception to the contemporaneous-objection rule.

> I discussed the question out of the hearing of the jury with the prosecutor and the defense lawyer and we all agree that, of course, the answer I could have given was, "If you are unable to arrive at a verdict on punishment, then the court would punish."

> When we went back and told them that I couldn't answer that question other than tell them that they must be unanimous on a finding of punishment in order to return a verdict, I was again asked in the presence of the lawyers, "Well, what happens if we can't?" The court simply said, "Well, you haven't been deliberating long enough for the court to consider that as an option. Anything else, gentleman?

> [PROSECUTING ATTORNEY]: No, sir.

> [DEFENSE COUNSEL]: No, your Honor.

Further along in the deliberation process, the court again went on record and stated:

> The jury asked the question as to whether or not the defendant would get credit for the time he's served since [the] '97 trial or '96. And the court told them that he gets credit for all the time he served, which is the law.

There was no objection made by either party regarding this communication between the judge and the jury. Finally, when the jury was brought back into the courtroom, the foreperson attempted to ask the court a question. The trial court responded:

> No, sir. The only way you do that is from — you can from right there. I mean, the only way I can communicate with you is when the court reporter — in fact every time we've gone back to the door the court reporter's been given what the question was and what the response was.

■ The requirement of section 16-89-125(e) that the judge call the jury into open court to answer any question the jury might have is mandatory. *See Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986). Noncompliance with this statutory provision gives rise to a presumption of prejudice, and the State bears the burden of overcoming that presumption. *Id.*

Notwithstanding, in *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973), this court held that strict compliance had been waived

where the attorneys went with the judge to the jury room, everything that happened was reported in the record, and there was no possibility of prejudice. Likewise, in *Houston v. State*, 41 Ark. App. 67, 848 S.W.2d 430 (1993), the court of appeals rejected the appellant's argument that a mistrial should have been declared after the trial court violated section 16-89-125(e). There, the jury sent the judge a note, asking: "Are we allowed to require drug rehabilitation as part of the sentence?" *Id.* at 71, 848 S.W.2d at 433. The trial court answered, "You may make any recommendations you wish. Please keep this note. Jack Lessenberry." *Id.* In finding that this communication was not prejudicial and did not require a mistrial, the court of appeals stated:

> It was obvious the jury had finished deliberations on guilt by that point and simply wanted to add this condition to appellant's sentence. The record also shows that the court gave notice of the jury's note to defense counsel before the jury returned. Counsel made no motions or objections to the court's response at that time.

*Id.*

■ The situation at issue here is analogous to those in *Martin* and *Houston*. The statements made by the trial court on record indicate that when the jury sent out a question, it was discussed with both attorneys, and on at least one occasion, the attorneys were present with the judge at the jury room door when the jury asked a question. Moreover, the trial court presented the jury's questions to the court reporter so that the information could be transcribed on the record. Appellant never lodged any objection, nor made any claim, that the trial court's actions were prejudicial. Finally, the jury never even sentenced Appellant because they were deadlocked. While it was certainly inappropriate for the trial court to engage in any type of *ex parte* communication with the jury, the trial court's actions here did not result in prejudice to Appellant.

### Rule 4-3(h) Review

As required by Ark. Sup. Ct. R. 4-3(h), the remainder of the record has been reviewed for other reversible errors, and none have been found. Therefore, we affirm.