Ahbrae JONES *v.* STATE of Arkansas

CR 01-1312                                      78 S.W.3d 104

Supreme Court of Arkansas
Opinion delivered June 20, 2002
[Petition for rehearing denied July 11, 2002.*]

---

\* IMBER, J., not participating.

*Leverett & Watts, PLLC*, by: *Rosalyn A. Watts*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Ahbrae Jones appeals his conviction and life sentence arising out of the aggravated robbery of the Rock Creek Blockbuster video rental store in Little Rock, which was robbed on March 2, 1998. About two weeks later, on March 17, 1998, Jones and another man, Allan Smith, were arrested by Little Rock police officers at the Ashley Square shopping center at Rodney Parham and Reservoir for public intoxication. Smith later implicated Jones in the Blockbuster robbery, and Jones was charged with the robbery; following a trial, he was found guilty of aggravated robbery and theft of property. The jury sentenced him to life in prison.

■ ■ Although Jones's challenge to the sufficiency of the evidence is actually his third point on appeal, double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence prior to the other issues on appeal. *See Atkinson v. State,* 347 Ark. 336, 64 S.W.3d 259 (2002). This court will affirm a conviction if there is substantial evidence to support the verdict when viewed in the light most favorable to the State. *Engram v. State,* 341 Ark. 196, 15 S.W.3d 678 (2000), *cert. denied,* 531 U.S. 1081 (2001). Substantial evidence is evidence of sufficient force and character as to compel, with reasonable certainty, a conclusion beyond mere speculation or conjecture. *Id.*

On appeal, Jones contends that there was insufficient evidence to corroborate the testimony of an accomplice, Allan Smith. Smith testified that on March 2, 1998, he drove Jones to the Blockbuster at Rock Creek and dropped him off. Smith stated that Jones was wearing a black sweatshirt with a hood, some jeans and tennis shoes. Smith let Jones out at the front door of the store; when Smith looked inside, he did not see anyone, so he drove through the parking lot and turned his car around so that it was facing the store. Smith stated that he saw Jones go to the back of the store, and then saw him raise his hand, holding a pistol. At that point, Smith said, he knew Jones was robbing the store, but he did not stop Jones because there was a gun involved and he was not the police. Smith averred that he made up his mind to leave at that point, but as he pulled out onto Bowman Road, Jones came running up to the car, so Smith slowed down to let him in. Smith also identified the gun used in the robbery as belonging to his sister.

Jones contends that Smith's testimony was uncorroborated, and that his conviction cannot stand on the basis of Smith's testimony alone. In cases involving the testimony of an accomplice, Ark. Code Ann. § 16-89-111(e)(1) (1987) provides the following:

> A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

■ When offered to support the testimony of any accomplice, corroboration must be evidence of a substantive nature since it must be directed toward proving the connection of the accused with the crime and not directed toward corroborating the accomplice's testimony. *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001); *Meeks v. State*, 317 Ark. 411, 878 S.W.2d 403 (1994). The test for determining the sufficiency of the corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin, supra*; *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999).

■ Circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *Marta v. State*, 336 Ark. 67, 983 S.W.2d 924 (1999); *Peeler v. State*, 326 Ark. 423, 932 S.W.2d 312 (1996). Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000). Where circumstantial evidence is used to support accomplice testimony, all facts of evidence can be considered to constitute a chain sufficient to present a question for resolution by the jury as to the adequacy of the corroboration, and the court will not look to see whether every other reasonable hypothesis but that of guilt has been excluded. *Johnson v. State*, 303 Ark. 12, 792 S.W.2d 863 (1990).

In addition to Smith's testimony, the State introduced the testimony of three Blockbuster employees, Andrew Kronberg, Shawn Travis, and Anthony McFarland, who were working in the store the night of the robbery. A stocky black man, approximately 5'8" in height and around 180 pounds, and wearing a black hooded sweatshirt, tennis shoes, sunglasses, and a bandana over his face, entered the store approximately ten or fifteen minutes before closing. The man brandished a gold-plated .25 caliber handgun and ordered the three of them to the office in the back of the store, where Kronberg pulled money out of the safe and put it in a cardboard box, which he handed to the robber. Each of the three witnesses identified State's Exhibit 1 as being the gold handgun used during the robbery. Further, Travis and McFarland chose

Jones's photograph out of a photo lineup as looking like the robber, and all three identified Jones as looking like the robber in the courtroom. The State also introduced seven still photographs taken by the Blockbuster store's security cameras that aided the witnesses in identifying Jones as the robber.

Additionally, the State offered the testimony of Little Rock Police Officer Ralph Breshears, who arrested Jones and Smith on March 17, 1998. After the arrest, Breshears searched the area where the two men had been sitting, and found, among other items, the gold-plated handgun. At trial, the gun was introduced as State's Exhibit 1, which the three Blockbuster employees identified as looking like the gun used in the robbery, and which, as discussed above, Smith identified as belonging to his sister.

This evidence independently establishes the crime and tends to connect Jones with its commission. *See Martin, supra; Hogue v. State*, 323 Ark. 515, 915 S.W.2d 276 (1996); *Daniels v. State*, 308 Ark. 53, 821 S.W.2d 778 (1992). Clearly, the evidence introduced at trial was substantial to support the accomplice testimony of Allan Smith, and the trial court did not err in denying Jones's motion for directed verdict.

For his second point on appeal, Jones contends that the trial court erred in denying his mistrial motion after the following exchange occurred between the prosecutor, David Sachar, and testifying witness Officer Ralph Breshears:

> SACHAR: And you saw that car drive in and back into a spot, is that correct?
>
> BRESHEARS: Yes, sir, that's correct.
>
> SACHAR: Okay. Okay. After you have contact with them and you're talking to them, then what happened? Well, it's already been introduced.
>
> BRESHEARS: I discovered that they were both on parole and . . .

Defense counsel immediately objected, stating that Jones was not testifying and the jury "has no right to know that he has a prior record and I am moving for a mistrial. The prosecutor knows that; he knows he's not going to testify." The court

denied the motion for mistrial, stating that it would "advise the jury to disregard those remarks." Defense counsel said, "Judge, please do that over my objection. We cannot un-ring a bell. They know he's on parole." The judge replied, "Okay. I won't advise them of that then. Your motion is denied."

Among the factors to be considered in determining whether or not a trial court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response, *see Brown v. State*, 320 Ark. 201, 895 S.W.2d 909 (1995), and whether an admonition to the jury could have cured any resulting prejudice. *Id.*; *see also Blagg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). While there is "always some prejudice that results from the inadvertent mention of a prior conviction," *see Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991), this court has upheld denials of mistrials where, by chance remarks, it was brought out that the defendant had prior arrests, and even prior convictions, where the comment was inadvertent. *Cobbs v. State*, 292 Ark. 188, 728 S.W.2d 957 (1987); *see also Novak v. State*, 287 Ark. 271, 698 S.W.2d 499 (1985) (where juror commented during voir dire that he knew the defendant because he had arrested him, the trial court's denial of a mistrial did not require reversal because the evidence of guilt was overwhelming).

Here, it is plain that Breshears's comment about Jones's being on parole was inadvertent, and was not the answer that the prosecutor's question was intended to elicit. The prosecutor had only asked what happened after Breshears contacted Smith and Jones; nothing in the question indicated that the State was asking Breshears to divulge Jones's criminal history. In addition, the court offered to admonish the jury to disregard this statement, but Jones was adamant that doing so would only draw attention to the comment. Where an admonition to the jury could have cured the situation, but no such admonition is requested (and indeed was explicitly rejected), this court will not say that the trial court's decision to deny the mistrial motion was an abuse of discretion. *See, e.g., Hall v. State*, 314 Ark. 402, 862 S.W.2d 268 (1993).

In addition, Jones argues that the trial court's denial of his motion for mistrial was not harmless error, citing *Chapman v.*

*California*, 386 U.S. 18 (1967), and contending that the introduction of the allegedly improper testimony amounted to an unconstitutional comment on his right not to testify. However, for the reasons discussed above, the prosecutor's question and the witness's inadvertent comment do not rise to the level of constitutional error. In any event, even if any error occurred, it was harmless in light of the overwhelming evidence of guilt, as set forth above. *See Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001) (to conclude that a constitutional error is harmless and does not mandate reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict).

Jones's next point on appeal involves his defense witness, Tommy McIntosh, and his motion to limit the State's cross-examination of McIntosh and to preclude the introduction of evidence that McIntosh met Jones in prison. Just before Jones began to present his case-in-chief, the State objected to the testimony of Tommy McIntosh; the prosecutor said she anticipated that McIntosh would state that Allan Smith told him some guy named "Dray Dog" committed the robbery. The court ruled that McIntosh could testify, but the prosecutor interjected that if McIntosh were allowed to testify, "then the State is going to have to inquire about how his relationship with Ahbrae Jones was formed because we believe that goes to bias." The court agreed, noting that any witness was subject to wide cross-examination, and concurring with the State that bias was always relevant.

The trial court was correct. Under Ark. R. Evid. 404(b), evidence of other crimes will be admitted if it has independent relevance, and its relevance is not substantially outweighed by the danger of unfair prejudice. *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992). As to whether the evidence is independently relevant, it must be relevant in the sense of tending to prove some material point rather than merely trying to prove the defendant is a criminal. *Id.* On appeal, we will not reverse a trial court's decision regarding admission of evidence absent a manifest abuse of discretion. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). Further, the scope of cross-examination extends to matters of credibility. Ark. R. Evid. 611; *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999). A matter is not collat-

eral if the evidence is relevant to show bias, knowledge, intent, or interest. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 833 (1993); *Goodwin v. State*, 263 Ark. 856, 568 S.W.2d 3 (1978). Proof of bias is "almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness's testimony." *Fowler, supra* (citing *United States v. Abel*, 469 U.S. 45 (1984)). In other words, matters affecting the credibility of a witness are always relevant. *Id.*

Here, when Jones called McIntosh to the stand, McIntosh testified that he had a conversation with Allan Smith about the Blockbuster robbery, and Smith told him that the police were "trying to get some guy named A.J." and that "some crip named 'Tray Dog'" from California had committed the robbery. McIntosh asked Smith why he was "telling on this guy named A.J.," and Smith replied that the police believed "he did some bank robberies and they really want him bad." Smith also told McIntosh that he was "going to save myself, they ain't going to charge me."

On cross-examination, the State questioned McIntosh about his relationship with Jones, and McIntosh informed the jury that he had met Jones in prison, where Jones was his supervisor training him for a clerk job. The purpose of the State's cross-examination of McIntosh was to show that the witness was a friend of Jones and would testify favorably for that reason. In order to establish the friendship between Jones and McIntosh, the State inquired into how the two had met. Because the State is entitled to prove its case as conclusively as it can, *see Regalado v. State*, 331 Ark. 326, 961 S.W.2d 739 (1998), and because the evidence of where McIntosh and Jones met was relevant to proving McIntosh's bias, the trial court did not abuse its discretion in allowing the State to delve into this area of cross-examination.

Finally, Jones argues that the trial court erred in denying his motion for new trial, wherein he raised the same three arguments he now poses to this court. He also contends that the trial judge acknowledged that there was error in the trial when he ruled that the State was entitled to cross-examine McIntosh, stating, "I think you've already got a mistrial for reversible error any-

way." However, we conclude that the trial judge's comment was merely an inadvertent expression of opinion that does not require this court to agree that reversible error had been committed, especially since the trial court previously ruled against Jones regarding any mistrial issue. It is for this court to decide when such an error has occurred, not the trial court. In any event, Jones's motion for new trial presented grounds that mirror his arguments on appeal. Because we find no error with respect to these three points, we hold that Jones's argument regarding the denial of his motion for new trial is moot and need not be addressed. *See Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000).

Jones was sentenced to life in prison. The record has been examined for adverse rulings objected to by the appellant but not argued on appeal, and no reversible error was discovered. Thus, we affirm.

IMBER, J., not participating.